**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| AMCO INSURANCE COMPANY, and ) | |
| DEPOSITORS INSURANCE COMPANY ) | |
| ) | |
|       Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No.: 4:19-cv-02202-SRC |
| COLUMBIA MAINTENANCE COMPANY, et al. ) | |
| ) | |
|       Defendants ) | |

**RESPONSE TO STATEMENT OF MATERIAL FACTS**

Comes now Defendants Harold Barnett and Charles Taylor, by and through their attorney, and for their response to Plaintiffs Depositors/AMCO's Statement of Uncontroverted Material Facts, state as follows:

## I.   THE DEPOSITORS CGL POLICY

*1.* Depositors issued a Commercial General Liability policy of insurance to named insureds Columbia Maintenance Company and MK Maintenance, Policy Number ACP GLDO 3006478056, with effective dates of 1/19/14 to 1/19/15 (the "Depositors CGL Policy"). (*Exhibit 1 – Certified Copy of Depositors Policy No. ACP GLDO 3006478056*).

**ANSWER: Admit**

*2.* Subject to certain provisions, conditions, definitions, limitations, and exclusions, the Depositors CGL Policy provides Commercial General Liability coverage for "bodily injury," "property damage" and "personal and advertising injury." (*Exhibit 1 – the Depositors CGL Policy*).

**ANSWER: Admit**

*3.* The Depositors CGL Policy contains the following relevant provisions, among others:

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.      Insuring Agreement**

**a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

***

**a.**      This insurance applies to "bodily injury" and "property damage" only if:

(1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)      The "bodily injury" or "property damage" occurs during the policy period;

***

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1.      Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may at our discretion investigate any offense and settle any claim or "suit" that may result.

b.      This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

***

[*Exhibit 1 – the Depositors CGL Policy*].

**ANSWER: Admit that defendant accurately quotes a portion of the policy. However, Plaintiffs deny that this is dispositive of coverage issues or that it provides a complete summary of the policies and coverages at issue. (See Exhibit 1 of plaintiffs' motion. See also, Defendants'**

**Motion for Summary Judgment on Issues of Coverage).**

4.     The   Depositors   CGL   Policy   also   contains   an   Endorsement   entitled "EMPLOYMENT-RELATED PRACTICES EXCLUSION," which is applicable to Coverage A and Coverage B. The exclusion provides, in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.     The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability**:

This insurance does not apply to:

"Bodily injury" to:

(1)     A person arising out of any:

    (a)     Refusal to employ that person;
    (b)     Termination of that person's employment; or
    (c)     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2)     The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1)     Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2)     Whether the insured may be liable as an employer or in any other capacity; and

(3)     To any obligation to share damages with or repay someone else who must pay damages because of the injury

    **B.**    The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to:

"Personal and advertising injury" to:

(1)    A person arising out of any:
    (a)    Refusal to employ that person;
    (b)    Termination of that person's employment; or
    (c)    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2)    The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1)    Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2)    Whether the insured may be liable as an employer or in any other capacity; and

(3)    To any obligation to share damages with or repay someone else who must pay damages because of the injury

                ***

(*Exhibit 2 – Employment-Related Practices Exclusion*).

**ANSWER: Admit that defendant accurately quotes a portion of the policy. However, Plaintiffs deny that this is dispositive of coverage issues or that it provides a complete summary of the policies and coverages at issue. (See Exhibit 1 of plaintiffs' motion. See also, Defendants' Motion for Summary Judgment on Issues of Coverage).**

    5.    The Depositors CGL Policy contains Definitions which are applicable to Coverage A and Coverage B, which state in pertinent part:

**SECTION V – DEFINITIONS**

***

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

***

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.     "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

   a.      False arrest, detention or imprisonment;
   b.      Malicious prosecution;
   c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor.
   d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e.      Oral or written publication, in any manner, of material that violates a person's right of privacy;
   f.      The use of another's advertising idea in your "advertisement"; or
   g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

***

[*Exhibit 1 – the Depositors CGL Policy*].

**ANSWER: Admit that defendant accurately quotes a portion of the policy. However, Plaintiffs deny that this is dispositive of coverage issues or that it provides a complete summary of the policies and coverages at issue. (See Exhibit 1 of plaintiffs' motion. See also, Defendants' Motion for Summary Judgment on Issues of Coverage).**

## II.      THE AMCO UMBRELLA POLICY

*6.*      AMCO issued a Commercial Umbrella Liability Insurance policy to named insureds Columbia Maintenance Company and MK Maintenance, Policy Number ACP CAA 3006478056, with effective dates of 1/19/14 to 1/19/15 (the "AMCO Umbrella Policy"). [*Exhibit*

*3 – Certified Copy of AMCO Policy No. ACP CAA 3006478056*].

**ANSWER: Admit**

7.      The AMCO Umbrella Policy contains the following insuring agreements, which read in pertinent part:

**INSURING AGREEMENTS**

**A.      Coverage A – Excess Follow Form Liability Insurance**

1.      Under Coverage A, we will pay on behalf of the "insured" that part of "loss" covered by this insurance in excess of the total applicable limits of "underlying insurance", provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of "underlying insurance" are, with respect to Coverage A, made a part of this policy except with respect to:

    a.      any contrary provision contained in this policy; or
    b.      any provision in this policy for which a similar provision is not contained in "underlying insurance".

2.      With respect to the exceptions stated above, the provisions of this policy will apply.

3.      The amount we will pay for damages is limited as described in Limits of Insurance.

4.      Notwithstanding anything to the contrary contained above, if "underlying insurance" does not cover "loss" for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such "loss".

*** 

**B.      Coverage B – Umbrella Liability Insurance**

1.      Under Coverage B, we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence". We will pay such damages in excess of the Retained Limit Aggregate specified in the Declarations or the amount payable by "other insurance" whichever is greater.

…

8.      This insurance applies to "bodily injury" and "property damage" only if:

a.     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

\*\*\*

[*Exhibit 3 – the AMCO Umbrella Policy*].

**ANSWER: Admit that defendant accurately quotes a portion of the policy. However, Plaintiffs deny that this is dispositive of coverage issues or that it provides a complete summary of the policies and coverages at issue. (See Exhibit 3 of plaintiffs' motion. See also, Defendants'Motion for Summary Judgment on Issues of Coverage).**

8.     The AMCO Umbrella Policy contains exclusions which are applicable to Coverage A and Coverage B, including the following, in pertinent part:

**Applicable to Coverage A and Coverage B**

Under Coverage A and Coverage B, this insurance does not apply to:

\*\*\*

**8.**     Employment-related Practices

"Injury or damage", "bodily injury" or "personal and advertising injury" to:

a.     A person arising out of any:

     1)     Refusal to employ that person;
     2)     Termination of that person's employment; or
     3)     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

b.     The spouse, child, parent, brother or sister of that person as a consequence of "injury or damage", "bodily injury" or "personal and advertising injury" to that person at whom any of the employment related practices described in Paragraph 1), 2) or 3) above is directed.

This exclusion applies whether the injury causing event described in Paragraph **1)**, **2)** or **3)** above occurs before employment, during employment or after employment of that person.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

\*\*\*

(*Exhibit 3 – the AMCO Umbrella Policy, Page 13*).

**ANSWER: Admit that defendant accurately quotes a portion of the policy. However, Plaintiffs deny that this is dispositive of coverage issues or that it provides a complete summary of the policies and coverages at issue. (See Exhibit 3 of plaintiffs' motion. See also, Defendants' Motion for Summary Judgment on Issues of Coverage).**

**9.**     The AMCO Umbrella Policy contains the following Definitions, which state in pertinent part:

**DEFINITIONS**

A.     **Applicable to Coverage A and Coverage** B

As used in Coverage A and Coverage B:

\*\*\*

6. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

13. "Underlying insurance" means the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy, including any type of self-insurance or alternative method by which the "insured" arranges for funding of legal liabilities that affords coverage that this policy covers.

\*\*\*

B.     **Applicable to Coverage A Only**

As used in Coverage A:

1.   "Injury or damage" means any injury or damage covered in the applicable "underlying insurance" arising from an "occurrence."

\*\*\*

**C.    Applicable to Coverage B Only**

As used in Coverage B:

\*\*\*

2. "Bodily injury" means physical injury, sickness or disease to a person and, if arising out of the foregoing, mental anguish, mental injury, shock or humiliation, including death at any time resulting therefrom.

\*\*\*

9.   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses committed in the course of your business:
a.   false arrest, detention or imprisonment;
b.   malicious prosecution;
c.   the wrongful eviction from, wrongful entry into, or evasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owners, landlord or lessor;
d.   oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services;
e.   oral or written publication of material that violates a person's right of privacy;
f.   discrimination, unless insurance coverage therefore is prohibited by law or statute;
g.   the use of another's advertising idea in your "advertisement"; or
h.   infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*\*\*

*(Exhibit 3 – the AMCO Umbrella Policy).*

**ANSWER: Admit that defendant accurately quotes a portion of the policy. However, Plaintiffs deny that this is dispositive of coverage issues or that it provides a complete summary of the policies and coverages at issue. (See Exhibit 3 of plaintiffs' motion. See also, Defendants' Motion for Summary Judgment on Issues of Coverage).**

### III.   HAROLD BARNETT CLAIMS

*10.*      Harold Barnett is a former employee of Columbia Maintenance Company, MK Maintenance, LLC, Columbia Maintenance Company d/b/a MK Maintenance, and/or the owner of those businesses, William Hausman ("the Columbia Maintenance Defendants). (*Exhibit 4 – Harold Barnett's First Amended Petition, ¶3*). (*Exhibit 10 – Columbia Maintenance Defendants' Responses to Harold Barnett's Requests for Admissions, ¶6*).

**ANSWER: Denied, Harold Barnett is a former employee of Columbia Maintenance Company only. (See Plaintiffs' Exh. 10-Columbia Maintenance Response, para 6, of Barnett's Requests for Admissions.)**

11.      Following the termination of his employment with the Columbia Maintenance Defendants, Harold Barnett, by and through his attorneys, prepared or caused to be prepared a First Amended Petition which contains purported facts and allegations against the Columbia Maintenance Defendants which are incorporated by reference herein. (*Exhibit 4 – Harold Barnett's First Amended Petition*).

**ANSWER: Denied, following termination Barnett filed a claim with the EEOC and Missouri Human Rights Commission and then filed a Petition, and later filed an Amended Petition (See Defendants' Exh A. Barnett Petition with attachments and Plaintiffs' Exh. 4).**

12.      Barnett, in the First Amended Petition, asserts identical counts against each of the Columbia Maintenance Defendants for Discrimination in Violation of the Missouri Human Rights Act (Count I); Hostile Work Environment (Count II); and Negligent Infliction of Emotional Distress (Count III). (*Exhibit 4 – Harold Barnett's First Amended Petition*).

**ANSWER: Denied, obviously the counts are not identical since they state different causes of action. (See Pltfs Exh. 4). If plaintiff is meaning that all counts are against all defendants, then that is correct and hereby admitted.**

13.     Barnett, in the First Amended Petition, alleges that "he was employed by Defendants at their property located at 2519 Woodson Road, Overland, Missouri . . . where all unlawful employment practices complained of herein were committed." (*Exhibit 4 – Harold Barnett's First Amended Petition*, ¶ 3).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

14.     Barnett, in the First Amended Petition, alleges that Defendant William Hausman was the President and owner, and was an agent, servant, or employee of Defendants Columbia Maintenance Company, MK Maintenance, LLC, and Columbia Maintenance Company d/b/a MK Maintenance. Barnett further alleges that "throughout the course of [Barnett's] employment, Defendant William Hausman was acting "within the course and scope of his agency, servancy or employment" with Defendants, and "was acting as Plaintiff's superior with the authority to hire, fire, or discipline Plaintiff." (*Exhibit 4 – Harold Barnett's First Amended Petition*, ¶¶ 8, 21).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraphs. (See Plaintiffs Exh. 4).**

15.     All of William Hausman's interactions with Harold Barnett occurred in the course of Mr. Hausman's operation of his business, Columbia Maintenance Company. (*Exhibit 10 – Columbia Maintenance Defendants' Responses to Harold Barnett's Requests for Admissions, ¶12)*

**ANSWER: Admit**

16.     Barnett, in the First Amended Petition, alleges that "at all times relevant herein" Defendants Columbia Maintenance Company, MK Maintenance, LLC, and Columbia Maintenance Company d/b/a MK Maintenance "were acting by and through their agents, servants or employees." (*Exhibit 3 – Harold Barnett's First Amended Petition*.¶ 10).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition. (See Plaintiffs Exh. 4).**

17.     In Count I of Barnett's First Amended Petition, Barnett alleges that the Columbia Maintenance Defendants "negligently allowed, fostered and maintained a discriminatory climate based upon race, resulting in a hostile place of employment for Plaintiff" while he was employed by Defendants. (*Exhibit 4 – Harold Barnett's First Amended Petition* ¶ 35).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

18.     In Count I of Barnett's First Amended Petition, Barnett alleges that the Columbia Maintenance Defendants violated the Missouri Human Rights Act "by their actions and failures to act, discriminated against Plaintiff on the basis of race by subjecting Plaintiff to unwelcome and offensive remarks, maintaining an offensive and hostile work environment for Plaintiff, and by failing to effectively remedy this hostile work environment." (*Exhibit 4 – Harold Barnett's First Amended Petition*, ¶ 36).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

19.     In Count I of Barnett's First Amended Petition, Barnett alleges that Defendants wrongfully terminated his employment with Defendants. (*Exhibit 4 – Harold Barnett's First Amended Petition,* ¶ 37).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

20.     In Count I of Barnett's First Amended Petition, Barnett describes his allegations against the Columbia Maintenance Defendants as "unlawful employment practices in violation of the MHRA." (*Exhibit 4 – Harold Barnett's First Amended Petition*, ¶ 38).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

21. As a result of the alleged "unlawful employment practices" of the Columbia Maintenance Defendants, Barnett alleges in Count I that he sustained damages including "past and future lost wages, income and benefits, bodily injury, including physical pain and discomfort including anxiety, nervousness and general feelings of physical pain, emotional pain and mental anguish, depression, feeling powerless, humiliation, nervousness, harm to reputation and loss of enjoyment of life" both in the past and in the future. (*Exhibit 4 – Harold Barnett's First Amended Petition,* ¶41).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

22. In Count II of Barnett's First Amended Petition, Barnett alleges that he was "subjected to unwelcome harassment" during his employment and that race was a contributing factor in such harassment. (*Exhibit 4 – Harold Barnett's First Amended Petition*, ¶¶ 47, 48).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

23. In Count II of Barnett's First Amended Petition, Barnett alleges that the Columbia Maintenance Defendants, by their actions and failures to act, negligently discriminated against Plaintiff on the basis of race and sex by maintaining an offensive work environment hostile to Plaintiff, and by negligently failing to effectively remedy this hostile work environment." (*Exhibit 4 – Harold Barnett's First Amended Petition*, ¶ 49).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

*24.* As a result of the alleged "hostile work environment," Barnett alleges in Count II that he was terminated from his employment because of his race. (*Exhibit 4 – Harold Barnett's*

*First Amended Petition, ¶ 51).*

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

25. Barnett further alleges in Count II that he sustained damages including "past and future lost wages, income and benefits, bodily injury, including physical pain and discomfort including anxiety, nervousness and general feelings of physical pain, emotional pain and mental anguish, depression, feeling powerless, humiliation, nervousness, harm to reputation and loss of enjoyment of life" both in the past and in the future. (*Exhibit 4 – Harold Barnett's First Amended Petition*, ¶ 53).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

26. In Count III of Barnett's First Amended Petition, Barnett alleges that during his employment, the Columbia Maintenance Defendants "had a duty not to discriminate against [him] or to treat him differently than other employees based on the basis of race." (*Exhibit 4 – Harold Barnett's First Amended Petition*, ¶ 59).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

27. In Count III of Barnett's First Amended Petition, Barnett alleges that the Columbia Maintenance Defendants breached their duty to him and "by their actions and failures to act, negligently discriminated against [him] on the basis of race by maintaining an offensive work environment hostile to [him] and by negligently failing to effectively remedy" the hostile work environment. (*Exhibit 4 – Harold Barnett's First Amended Petition,* ¶ 60).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

28.     As a result of the alleged negligence by the Columbia Maintenance Defendants, Barnett alleges in Count III that he sustained and experienced "emotional distress and mental injury that was medically diagnosable . . . " (*Exhibit 4 – Harold Barnett's First Amended Petition*, ¶ 62).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 4).**

*29.*     The allegations by Barnett in his First Amended Petition constitute alleged injuries arising out of alleged discriminatory offenses allegedly committed in the course of the Columbia Maintenance Defendants' business. (*Exhibit 10 – Columbia Maintenance Defendants' Responses to Harold Barnett's Requests for Admissions, ¶20).*

**ANSWER: Admit**

## IV.     CHARLES TAYLOR CLAIMS

*30.*     Charles Taylor is a former employee of Columbia Maintenance Company, MK Maintenance, LLC, Columbia Maintenance Company d/b/a MK Maintenance, and/or the owner of those businesses, William Hausman ("the Columbia Maintenance Defendants). (*Exhibit 5 – Charles Taylor's First Amended Petition, ¶3;) (Exhibit 9 – Columbia Maintenance Defendants' Responses to Charles Taylor's Requests for Admissions, ¶6).*

**ANSWER: Denied, Charles Taylor is a former employee ONLY of Columbia Maintenance Company and MK Maintenance LLC. William Hausman was the owner of those entities and his direct supervisor. (See Plaintiffs' Exh. 9-Columbia Maintenance Response, para 6 and 18, of Barnett's Requests for Admissions.)**

31.     Following the termination of his employment with the Columbia Maintenance Defendants, Charles Taylor, by and through his attorneys, prepared or caused to be prepared a First

Amended Petition which contains purported facts and allegations against the Columbia Maintenance Defendants which are incorporated by reference herein. (*Exhibit 5 – Charles Taylor's First Amended Petition*).

**ANSWER: Denied, following termination Taylor filed a claim with the EEOC and Missouri Human Rights Commission and then filed a Petition, and later filed an Amended Petition (See Defendants' Exh B. Taylor Petition with attachments and Plaintiffs' Exh. 5).**

32.    Taylor, in the First Amended Petition, asserts identical counts against each of the Columbia Maintenance Defendants for Discrimination in Violation of the Missouri Human Rights Act (Count I); Retaliation (Count II); Hostile Work Environment (Count III); and Negligent Infliction of Emotional Distress (Count IV). (*Exhibit 5 – Charles Taylor's First Amended Petition*).

**ANSWER: Denied, obviously the counts are not identical since they state different causes of action. (See Pltfs Exh. 5). If plaintiff is meaning that all counts are against all defendants, then that is correct and hereby admitted.**

33.    Taylor, in the First Amended Petition, alleges that "he was employed by Defendants at their property located at 2519 Woodson Road, Overland, Missouri . . . where all unlawful employment practices complained of herein were committed." Taylor alleges that the Columbia Maintenance Defendants employed him "at all pertinent times." (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 3, ¶ 12).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

34.    Taylor, in the First Amended Petition, alleges that Defendant William Hausman was the President and owner, and was an agent, servant, or employee of Defendants Columbia Maintenance Company, MK Maintenance, LLC, and Columbia Maintenance Company d/b/aMK

Maintenance. Taylor further alleges that "throughout the course of [Taylor's] employment, Defendant William Hausman was acting "within the course and scope of his agency, servancy or employment" with Defendants." (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 8, 21).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

35.     Taylor, in the First Amended Petition, alleges that "at all times relevant herein" Defendants Columbia Maintenance Company, MK Maintenance, LLC, and Columbia Maintenance Company d/b/a MK Maintenance "were acting by and through their agents, servants or employees." (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 9).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

36.     Taylor, in the First Amended Petition, alleges that during his period of employment with Defendants, Defendant Hausman made a series of racially or ethnically discriminatory statements directed to, or in the presence of, Taylor while in the workplace. (See generally *Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 28-66).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

37.     In Count I of Taylor's First Amended Petition, Taylor alleges that Defendants discriminated against him in the workplace based upon his marriage to a Mexican woman and his support for minority employees. (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶71).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

38.     In Count I of Taylor's First Amended Petition, Taylor alleges that the Columbia Maintenance Defendants "negligently allowed, fostered and maintained a discriminatory climate

based upon race, resulting in a hostile place of employment for Plaintiff" while he was employed by Defendants. (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 73).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

39.     In Count I of Taylor's First Amended Petition, Taylor alleges that the Columbia Maintenance Defendants violated the Missouri Human Rights Act "by their actions and failures to act, discriminated against [Taylor] on the basis of race by subjecting [Taylor] to unwelcome and offensive remarks, maintaining an offensive and hostile work environment for [Taylor], and by failing to effectively remedy this hostile work environment." (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 74).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

40.   In Count I of Taylor's First Amended Petition, Taylor alleges that the Columbia Maintenance Defendants wrongfully terminated his employment with Defendants. (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 75).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

41.     In Count I of Taylor's First Amended Petition, Taylor describes his allegations against the Columbia Maintenance Defendants as "unlawful employment practices in violation of the MHRA." (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 76).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

42.     As a result of the alleged "unlawful employment practices" of the Columbia Maintenance Defendants, Taylor alleges in Count I that he sustained damages including "past and

future lost wages, income and benefits, bodily injury, including physical pain and discomfort including anxiety, nervousness and general feelings of physical pain, emotional pain and mental anguish, depression, feeling powerless, humiliation, nervousness, harm to reputation and loss of enjoyment of life" both in the past and in the future. (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 79).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

43.     In Count II of Taylor's First Amended Petition, Taylor alleges that the Columbia Maintenance Defendants threatened him and subjected him to "harassing, derogatory, and humiliating remarks and ordered him to perform additional, impossible and/or degrading job tasks as punishment and in retaliation" for Taylor repeatedly asking Defendant Hausman to cease his racially and ethnically discriminatory behavior and comments. (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 85).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

*44.*     All of William Hausman's interactions with Charles Taylor occurred in the course of Mr. Hausman's operation of his businesses, Columbia Maintenance Company and MK Maintenance, LLC. (*Exhibit 9 – Columbia Maintenance Defendants' Responses to Charles Taylor's Requests for Admissions, ¶12*).

**ANSWER: Admit**

45.     In Count II of Taylor's First Amended Petition, Taylor alleges that he was ultimately wrongfully terminated from his employment with the Columbia Maintenance Defendants in retaliation for his complaints about Defendant Hausman's racially and ethnically discriminatory behavior and comments. (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶

87).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

46.     In Count II of Taylor's First Amended Petition, Taylor alleges that his termination of employment by the Columbia Maintenance Defendants was in direct violation of Mo. Rev. Stat. § 213.070(2). (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 88).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

47.     As a result of the alleged retaliatory discharge by the Columbia Maintenance Defendants, Taylor alleges in Count II that he sustained damages including "past and future lost wages, income and benefits, bodily injury, including physical pain and discomfort including anxiety, nervousness and general feelings of physical pain, emotional pain and mental anguish, depression, feeling powerless, humiliation, nervousness, harm to reputation and loss of enjoyment of life" both in the past and in the future. (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 90).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

48.     In Count III of Taylor's First Amended Petition, Taylor alleges that he was "subjected to unwelcome harassment" during his employment and that race was a contributing factor in such harassment. (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶¶ 96, 97).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

49.     In Count III of Taylor's First Amended Petition, Taylor alleges that the Columbia Maintenance Defendants, by their actions and failures to act, negligently discriminated against

Plaintiff on the basis of race and sex by maintaining an offensive work environment hostile to Plaintiff, and by negligently failing to effectively remedy this hostile work environment." (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 98).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

50.  As a result of the alleged "hostile work environment," Taylor alleges in Count III that he was terminated from his employment by one or more of the Columbia Maintenance Defendants. Taylor further alleges that he sustained damages including "past and future lost wages, income and benefits, bodily injury, including physical pain and discomfort including anxiety, nervousness and general feelings of physical pain, emotional pain and mental anguish, depression, feeling powerless, humiliation, nervousness, harm to reputation and loss of enjoyment of life" both in the past and in the future. (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶¶ 100, 102).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

51.    In Count IV of Taylor's First Amended Petition, Taylor alleges that during his employment, the Columbia Maintenance Defendants "had a duty not to discriminate against [him] or to treat him differently than other employees based on the basis of race." (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 108).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

52.    In Count IV of Taylor's First Amended Petition, Taylor alleges that the Columbia Maintenance Defendants breached their duty to him and "by their actions and failures to act, negligently discriminated against [him] on the basis of race by maintaining an offensive work environment hostile to [him] and by negligently failing to effectively remedy" the hostile work

environment. (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 109).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

53.     As a result of the alleged negligence by the Columbia Maintenance Defendants, Taylor alleges in Count IV that he sustained and experienced "emotional distress and mental injury that was medically diagnosable . . . " (*Exhibit 5 – Charles Taylor's First Amended Petition*, ¶ 111).

**ANSWER: Admit that this is in the petition, but deny that this states the whole of the petition or even the entire paragraph. (See Plaintiffs Exh. 5).**

*54.*     The allegations by Taylor in his First Amended Petition constitute alleged injuries arising out of alleged discriminatory offenses allegedly committed in the course of the Columbia Maintenance Defendants' business. (*Exhibit 9 – Columbia Maintenance Defendants' Responses to Charles Taylor's Requests for Admissions, ¶20).*

**ANSWER: Admit**

## VI.     AMCO/DEPOSITORS' COVERAGE DECISION

55.     The Columbia Maintenance Defendants, by and through their personal counsel, provided the First Amended Petitions filed by Barnett and Taylor to a representative of AMCO and Depositors on May 23, 2019, and requested a defense and indemnity pursuant to the AMCO and Depositors policies. (*Exhibit 6 – May 23, 2019 Letter from attorney James Wyrsch*).

**ANSWER: Admit that the First Amended Petitions were provided by Mr. Wyrsch on May 23 to these insurance companies, but deny that this was the first request for the insurance companies to provide coverage and defend Mr. Hausman and his companies in these actions. Defense and indemnification was requested on February 27, 2019. Exhibit 6 is a continuing pleading for assistance with the case to provide coverage and defense, what is commonly known as a sort of "a hammer letter," demanding representation and explaining to the**

**insurance companies why the denial letter of April 19, 2019, was incorrect and made no sense. It further explains that this denial of coverage prejudices their insured by jeopardizing the health, welfare and livelihood of Mr. Hausman and his companies. (See Ptlfs' Exh. 6 and Defendants' Exhs. C and D (1st Amended Petitions of Barnett and Taylor); Exh. E (Wyrsh 2/27/19 Letter tendering representation and requesting defense and indemnification); Exh. F (Email confirmation of 2/27/19 from the claims processing team acknowledging receipt of the letter); Exh. G, (stipulation as to foundation from Depositors and AMCO); and Exh. H, (Affidavit of James Wyrsch).**

56.     Following a review of the First Amended Petitions, AMCO and Depositors disclaimed liability coverage for the claims asserted by Barnett and Taylor in the First Amended Petitions and notified the attorneys for the Columbia Maintenance Defendants of that coverage decision in a letter which is incorporated by reference herein. (*Exhibit 7 – July 26, 2019 Letter to James Wyrsch*).

**ANSWER: Admit that this letter was sent on July 26, 2019, but defendants can neither admit or deny what was done prior to this denial to review the claim so must deny that this letter was sent following a review of anything and deny that it served as anything but further proof of bad faith on the part of these insurance companies. Defendants also deny that this is a "MATERIAL" statement as it pertains to this case. It may be material in the state bad faith garnishment action, but not in this coverage action since the plaintiffs are stuck with their original reason for denial of coverage. (See, Exh. I and J, Insurers' 4/19/19 letters denying coverage on the Barnett and Taylor claims respectively.) The standards of the insurance industry, the written guidelines of insurers which follow those standards and Missouri caselaw all require once an insurer first denies coverage for a given loss, having denied liability for a stated reason, an insurer may not later assert a different one and once an insurer denies**

liability on a given ground, it may not thereafter defend on a different ground. If an insurer denies liability upon a specified ground or defense, all other grounds or defenses are waived. It is well understood in the industry that a denial of coverage which fails to meet the standards will or may estop the insurer from later denying coverage on different grounds or grounds not properly raised in the denial letter. The denial letter of 4/19/19 admitted that the discrimination claims asserted were, in fact, "personal and advertising injury" within the meaning of the policy. The denial letter did not remotely explain how the policy could both promise to pay for injuries which it admitted fell within its promise to pay for injuries and damages arising from discrimination, while simultaneously claiming that it had made no such promise. The denial took the position that there must be an "occurrence" or defined offense for coverage to apply, while coverage B applies only to offenses. Moreover, the denial letter did not attempt to explain how or why the laundry list of exclusions applied. It just concluded by saying essentially, that while these acts are covered, the damages are excluded, which makes no sense, but in addition, there is no explanation as to why they are excluded. In the 13 page recitation of just excerpts from the policy, there is no discernable analysis. In addition to being wrong, the denial was confusing, unclear and ambiguous. AMCO Insurance Company is estopped under Missouri law and industry standards and practice from asserting any grounds for denial, since none were properly raised and explained in the original denial letter. Even, if one were to assume that there was a "properly raised", detailed and understandable reason for denial in the insurers' first letter of denial as it pertains to AMCO Coverage B, the only option would be to look to the summation in the letter, which states that what was plead by the Plaintiffs in the underlying action was covered as a personal and advertising injury under the policy, but somehow, for some unexplained reason, the damages were excluded. Any other reason for denial set forth in the insurers second letter of denial of July 26, 2019, or yet another

**reason for denial set forth in their Motion for Summary Judgment should not be entertained as under insurance industry standards and clear longstanding Missouri law, they are estopped from doing so. (See, Exh. K—Taff Affidavit, paragraphs 11, 21 and 22, and See, Defendants Motion for Summary Judgment as to coverage.)**

57.     Plaintiffs then proceeded to file a Complaint for Declaratory Judgment in the instant cause on July 26, 2019, seeking, *inter alia*, a judicial determination that the Depositors and AMCO policies do not provide liability coverage for the claims asserted by Barnett and Taylor in their First Amended Petitions, as coverage is barred by the "Employment-Related Practices Exclusion" in the policies. (*Exhibit 8 – Complaint for Declaratory Judgment*).

**ANSWER: Admit that such a Complaint was filed, deny that plaintiffs are entitled to such relief. (See, Defendants' Motion for Summary Judgment as to the coverage question and Plaintiffs' Motion to Dismiss under the abstention doctrine in *Brillhart* and *Wilton* U.S. Supreme Court precedent.)**

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK**

**DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS STARTS ON THE NEXT PAGE**

## DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS

Comes now Defendants Harold Barnett and Charles Taylor, by and through their attorney of record, and for their Statement of Additional Material Facts, state as follows:

1.      Harold Barnett filed his petition for violations of Missouri laws under the Missouri Human Rights Act against Columbia Maintenance and William Hausman in St. Louis County Circuit Court in the State of Missouri. *Exhibit A, Barnett Petition with Exhibits.*

2.      Charles Taylor filed his petition for violations of Missouri laws under the Missouri Human Rights Act against Columbia Maintenance, MK Maintenance LLC and William Hausman in St. Louis County Circuit Court in the State of Missouri. *Exhibit B, Taylor Petition with Exhibits.*

3.      Columbia Maintenance, MK Maintenance LLC and William Hausman were represented by James Wyrsch due to the fact the insurance companies, Depositors and AMCO, refused to represent their insureds. *See, Plaintiffs' Exhibits 1 and 3, insurance policies; Defendants' Exhibit H, Wyrsch Affidavit; Exhibit E, 2/27/19 Wyrsch Letter; Exhibits I and J, 4/19/19 Insurance Denial Letters; and Exhibit G, Plaintiffs' Stipulation as to Foundation.*

4.      The insurers were notified on 2/27/19 of the pending litigation by Mr. Wyrsch who requested coverage and defense of the claims. *See, Exhibit E, 2/27/19 Wyrsch Letter and Exhibit T, Insurers' Answers to Interrogatories, No. 1.*

5.      The first attempt to articulate any reason for denying coverage from the insurance companies came in the form of the April 19, 2019 letter from Chad Christiansen denying coverage in a way that made "no sense," even to Defendants' Columbia, MK and Hausman's lawyer. *See, Exhibits Exhibits I and J, 4/19/19 Insurance Denial Letters; Exhibit E, 2/27/19 Wyrsch Letter requesting defense; Exhibit M, Wyrsch 2/28/19 email re coverage duty and presentation of reasons; Exhibit N, 3/28/19 email and letter from Wyrsch to ins co's attaching letter re coverage explanation; Exhibit O, 5/23/19 letter from Wyrsch to ins co's stating the reason given for denial "makes no sense" paragraph*

*3, line 4; Exhibit T, Insurers' Answers to Interrogatories, No. 2.*

6.     AMCO had issued an Umbrella Liability Insurance Policy with Columbia Maintenance and MK Maintenance as named insureds, with coverage effective dates of 1/19/14 to 1/19/15. The dates for the alleged acts in the Barnett and Taylor Petitions fell within those policy coverage dates. *See, Exhibits A and B, Barnett and Taylor Petitions; Plaintiffs Statement of Material Facts and Motion for Summary Judgment; Plaintiffs' Exhibits 1 and 3, the insurance policies; Exhibit P Def Columbia and Hausman responses to Requests for Admission Barnett, paragraphs 8 and 11; Exhibit Q Def Columbia, MK and Hausman responses to Requests for Admission Taylor, paragraphs 8 and 11.*

7.     AMCO's Umbrella Liability Insurance Policy, Policy Number ACP CAA 3006478056, provided in pertinent part:

The umbrella policy contains, in pertinent part, the following provisions:

### DECLARATIONS

\*\*\*
ITEM 1
Named Insured:   **COLUMBIA MAINTENANCE COMPANY**
                 **MK MAINTENANCE**
\*\*\*
Item 6

| Limits of Insurance | a) | **$3,000,000** Each Occurrence |
|---|---|---|
| | \*\*\* | |
| | c) | **$3,000,000** Other Aggregate |

\*\*\*
*[DEP/AMCO 0691]*

### COMMERICAL UMBRELLA LIABILITY POLICY

\*\*\*
Throughout this policy the words "you" and your" refer to the Named Insured shown in the Declarations . . .
Other words and phrases that appear in quotation marks are defined in this policy. These definitions are found in the Definitions section or the specific policy provision where they appear.

### INSURING AGREEMENTS
\*\*\*
**B.     Coverage B – Umbrella Liability Insurance**

      **1.**    Under Coverage B, we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of . . . "personal and advertising injury" covered by this insurance . . .

*[DEP/AMCO 0696]*


**DEFINITIONS** *[DEP/AMCO 0706]*
\*\*\*
**C.**    **Applicable to Coverage B Only**
      **As used in this Coverage B:**
      \*\*\*
    **7.**    "Insured" means:

        **a.**    If you are designated in the Declarations as:
        \*\*\*
            **3)** A limited liability company, any member, but only with respect to the conduct of your business. Your managers are "insureds" but only with respect to their duties as your managers.
            **4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" . . .
    \*\*\*

*[DEP/AMCO 0709]*
    **9.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses committed in the course of your business:
      \*\*\*
        **f.**    discrimination, unless insurance coverage therefore is prohibited by law or statute.
    \*\*\*

*[DEP/AMCO 0710]*


**EXCLUSIONS**

**A.**    **Applicable to Coverage A and Coverage B**
    \*\*\*
    8.    Employment-related Practices
        "Injury or damage", "bodily injury" or "personal and advertising injury" to:

        **a.**    A person arising out of any:
          **1)**    Refusal to employ that person;
          **2)**    Termination of that person's employment; or
          **3)**    Employment related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or

malicious prosecution directed at that person; . . .

*[DEP/AMCO 0699]*

*See Exhibit R, AMCO Umbrella Policy.*

 **8.** Columbia Maintenance, MK Maintenance and William Hausman are "insureds" under the policy. *See Exhibit R, AMCO Umbrella Policy.*

 **9.** Barnett and Taylor both filed claims for discrimination against Columbia Maintenance, and William Hausman, and Taylor additionally against MK Maintenance. *See, Exhibits A and B, Petitions of Barnett and Taylor.*

 **10.** Barnett and Taylor claimed injury as result of the discriminatory acts of Columbia Maintenance, and William Hausman, and Taylor additionally against MK Maintenance. *See, Exhibits A and B, Petitions of Barnett and Taylor and Plaintiffs' Exhibits 4 and 5, 1st Amended Petitions of Barnett and Taylor.*

 **11.** The Barnett and Taylor claims fell within the insurance policy definition for "personal and advertising injury." *See, Exhibits A and B, Petitions of Barnett and Taylor; Exhibit R, AMCO policy DEP/AMCO 0710; Exhibit Q answer to request for admission 20; Exhibit P answer to request for admission 20 and Plaintiffs' Exhibits 4 and 5, 1st Amended Petitions of Barnett and Taylor.*

 **12.** The Barnett and Taylor original petitions and the 1st Amended Petitions are substantially the same and the small differences did not change any coverage decisions. *See, Exhibits A and B, Petitions; Plaintiffs' Exhibits 4 and 5 1st Amended Petitions; Exhibit Plaintiffs' Complaint, paragraphs 17 and 37.*

 **13.** Plaintiffs' Declaratory Judgment Action claims that an exclusion applies to take away this coverage. *See Plaintiffs' Exhibit 8, the Complaint.*

 **14.** The standards of the insurance industry and the written guidelines of insurers which follow those standards require that if there is an ambiguity as to whether an insurance policy affords

coverage for a given loss that the policy should be interpreted in favor of coverage and coverage should be accepted for the loss. *See Exhibit K, Affidavit of Insurance Industry Expert Wayne Taff, paragraph 9.*

15.     The standards of the insurance industry and the written guidelines of insurers which follow those standards require that if an insurer denies coverage for a given loss, the denial of coverage must be set forth in a letter to the insured, explaining in clear and unambiguous language the specific policy provisions which defeat coverage, clearly and ambiguously explaining how under the facts of the loss those provisions defeat coverage, explaining why the policy does not apply. Those same standards require the insurer to prepare the denial in a manner which can be understood by an ordinary layman and further require the insurer to take steps to make sure the insured understands the grounds and bases for the denial of coverage. It is well understood in the industry that a denial of coverage which fails to meet the standards will or may estop the insurer from denying coverage on grounds not properly raised in the denial letter. *See Exhibit K, Affidavit of Insurance Industry Expert Wayne Taff, paragraph 10.*

16.     The standards of the insurance industry and the written guidelines of insurers which follow those standards require that insurers understand that once an insurer first denies coverage for a given loss, having denied liability for a stated reason, an insurer may not later assert a different one and once an insurer denies liability on a given ground, it may not thereafter defend on a different ground. If an insurer denies liability upon a specified ground or defense, all other grounds or defenses are waived. It is well understood in the industry that a denial of coverage which fails to meet the standards will or may estop the insurer from later denying coverage on different grounds or grounds not properly raised in the denial letter. *See Exhibit K, Affidavit of Insurance Industry Expert Wayne Taff, paragraph 11.*

17.    The insurance industry recognizes and understands that insurers which issue an insurance policy in a given state are bound by the laws of that state regarding issues of insurance coverage, denial of insurance coverage and the duty to defend and that they are required to conform their conduct and actions to the laws of the state in which the policy was delivered. *See Exhibit K, Affidavit of Insurance Industry Expert Wayne Taff, paragraph 12.*

18.    Coverage B of the AMCO policy insures Columbia Maintenance, MK Maintenance and its or their insured employees for damages they became obligated to pay by reason of "personal and advertising injury. (DEP/AMCO 0706). The policy defines "personal and advertising injury", among other things, to include "f. discrimination, unless insurance coverage therefore is prohibited by law or statute." *See Exhibit R, AMCO Umbrella Policy DEP/AMCO 706,710; Exhibit K, Affidavit of Insurance Industry Expert Wayne Taff, paragraph 16.*

19.    Insurance companies, under known industry standards and guidelines are required to look to FIND coverage, not to exclude it. *See, Exhibit K, Affidavit of Insurance Industry Expert Wayne Taff, paragraph 19.*

20.    The denial letter admitted that the discrimination claims asserted were, in fact, "personal and advertising injury" within the meaning of the policy. The denial letter did not explain how the policy could both promise to pay for injuries which it admitted fell within its promise to pay for injuries and damages arising from discrimination, while simultaneously claiming that it had made no such promise. *See, Exhibits I and J, 4/19/19 Denial letter; Exhibit K, Affidavit of Insurance Industry Expert Wayne Taff, paragraph 21.*

21.    Insurers initial denial letter made no sense to Mr. Wyrsch, Defendants' attorney or to a 43 year veteran of the of the insurance industry, an expert who has spent his life advising, consulting, training, educating and representing insurance companies, handling coverage analyses on hundreds of occasions for over 25 domestic and international insurers. *See,*

*Exhibit O, Wyrsch Letter of May 23, 2019, 3rd paragraph, line 4; Exhibit K, Affidavit of Insurance*

*Industry Expert Wayne Taff, paragraph 3, 4, 5,6,7,8 and 21.*


Dated: October 15, 2020                                   **The Law Offices of Gretchen Myers, P.C.**
                                                          */s/ Gretchen Myers*
                                                          Gretchen Myers, #32219 (MO)
                                                          222 S. Central Ave., Suite 675
                                                          St. Louis, Missouri 63105
                                                          Telephone: (314)621-5454
                                                          Facsimile: (314)621-2868
                                                          gmyers@gmyerslaw.com
                                                          *Attorney for Defendants*
                                                          *Harold Barnett and Charles Taylor*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was electronically filed and served via the Court's electronic filing system this, the 15th day of October, 2020 to:

James Wyrsch, # 53197                     Russell F. Watters, #25758
911 Washington Avenue, Suite 211          John D. Cooney, #61080
St. Louis, MO 63101                       Brown & James, P.C.
314-288-0777                              800 Market Street, Suite 1100
james.wyrsch@kwlawstl.com                 St. Louis, MO 63101
*Attorneys for Defendants*                (314) 421-3400
*Columbia Maintenance Co.,*               rwatters@bjpc.com
*MK Maintenance LLC, and*                 jcooney@bjpc.com
*William Hausman*                         *Attorneys for AMCO and Depositors*