**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMCO INSURANCE COMPANY, and | ) | |
| DEPOSITORS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:19-cv-02202-SRC |
| | ) | |
| v. | ) | |
| | ) | |
| COLUMBIA MAINTENANCE COMPANY, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COVERAGE**

Comes now Defendants Harold Barnett and Charles Taylor, by and through their attorney, and for their Memorandum In Support of Defendants' Motion for Summary Judgment on Coverage, state as follows:

**INTRODUCTION**

This case should not be in any tribunal concerning insurance coverage issues. As the Court will see, in applying the facts of this case to the law of Missouri, Defendants Columbia, MK and Hausman are unequivocally entitled to coverage of the Barnett and Taylor claims. Defendants Barnett and Taylor file this cross motion for summary judgment on coverage issues alone because AMCO's policy is fatally flawed and furthermore, AMCO's actions have caused it to lose all rights at this point to deny coverage.

This case is in this Court as plaintiffs' chosen forum to continue to dispute the coverage they owe to their insureds, Columbia Maintenance Company (Columbia), MK Maintenance LLC

(MK) and William Hausman (Hausman) as owner and supervisory employee of the two companies. Currently pending is Defendants' fully briefed Motion to Dismiss based upon the *Brillhart/Wilton* abstention doctrine, since there is an underlying parallel equitable garnishment action pending in state court. The case before this Court involves an insurance coverage dispute governed strictly by Missouri law. Defendants file this cross Motion for Summary Judgment on coverage issues only out of an abundance of caution since such motions are due under this Court's scheduling order and the fact that this Court has not yet ruled on Defendants' Motion to Dismiss. Defendants are not intending, by this action, to waive in any way our pending Motion to Dismissal or to Stay this action by doing so. Should this Court immediately grant Defendants' Motion to Dismiss, this briefing can be utilized in the underlying garnishment action in state court.

## STANDARD OF REVIEW

Summary Judgment is only appropriate if the moving party shows that there is no genuine dispute at to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In a diversity action governed by Missouri Law, the court is bound by the decision of the Missouri Supreme Court regarding issues of substantive state law. *Bockelman v. MCI World Corp, Inc.*, 403 F.3d 528, 531. (8th Cir. 2005). The interpretation of the meaning of provisions in an insurance policy is a question of law for the Court. *Jones v. Mid-Century Insurance Co.*, 287 S.W.3d 687, 690 (Mo. banc 2009) (citing *Seeck v. Geico General Insurance Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). When construing the meaning of the terms of an insurance policy, the Court shall apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and all ambiguities must be resolved in favor of the insured." *Jones*, 287 S.W.3d at 690 (citing *Martin v. U.S.F.& G.*, 996 S.W.2d 506, 508 (Mo. banc 1999)).

## BACKGROUND

Harold Barnett  and Charles Taylor worked as commercial cleaners, and Mr. Taylor also as a supervisor, for Defendant William Hausman at his companies, Columbia Maintenance Company and MK Maintenance, LLC. Throughout the course of their time at these companies, both gentlemen were consistently and repeatedly subjected to discrimination based on race.  Mr. Barnett is African American, and Defendant Hausman consistently and repeatedly referred to Mr. Barnett using racial slurs and other generally derogative terminology, as well as treating him as subhuman.  Defendant Hausman repeatedly directed Mr. Barnett's supervisor, Charles Taylor, who was white, to fire or get rid of minority employees, including Mr. Barnett, despite the fact that Mr. Barnett was a long-time employee who reliably performed his work duties for Mr. Hausman and his companies in a consistent and capable manner. Mr. Taylor shared an office with Mr. Hausman where he was repeatedly harassed for sticking up for Mr. Barnett and others similarly situated and belittled because he had married someone of Mexican decent.

Defendant Hausman ultimately terminated Mr. Barnett for pretextual reasons and terminated Mr. Taylor for refusing to fire Mr. Barnett based upon false allegations and after Mr. Taylor threatened to go to the EEOC if Mr. Hausman's harassing and discriminatory acts and language didn't stop. Following their termination, Harold Barnett and Charles Taylor each filed suit against Defendant Hausman and his companies in St. Louis County Circuit Court in St. Louis, Missouri.  Their Petitions included counts for Discrimination and Hostile Work Environment, both in violation of the Missouri Human Rights Act Chapter 213 RSMO, both Missouri state law causes of action.

Defendant Hausman purchased insurance to provide himself and his companies with coverage in the event of just such a lawsuit. Defendant Hausman, as required pursuant to his policies, advised Depositors and AMCO of his Missouri state court lawsuit and asked for them to

defend and indemnify him and his companies against these claims pursuant to policies of insurance purchased from Depositors and AMCO.  Both companies refused to defend and indemnify them.

## THE INSURANCE POLICIES

Defendants Columbia, MK and Hausman purchased not one, but two, policies of insurance to make sure that all liability the company might incur was covered. The two policies and their interpretation are at the heart of this case:

- Depositors Insurance Company ("Depositors") issued a Commercial General Liability policy of insurance to named insureds Columbia Maintenance Company and MK Maintenance, Policy Number ACP GLDO 3006478056 (the "Depositors CGL Policy"), with effective dates of January 19, 2014 to January 19, 2015. (SUMF ¶ 6), and

- AMCO issued a Commercial Umbrella Liability Insurance policy to named insureds Columbia Maintenance Company and MK Maintenance, Policy Number ACP CAA 3006478056, with effective dates of 1/19/14 to 1/19/15 (the "AMCO Umbrella Policy"). (SUMF ¶ 6).

Contrary to plaintiffs' contention, the two policies are not alike. The Depositors' policy does not suffer from the same fatal flaw as is found in the AMCO policy. Therefore, Defendants will be addressing the AMCO insurance policy coverage provisions.

The important coverage provisions, including the exclusion are all contained within Defendants' paragraph 7 of defendants' statement of uncontroverted material facts filed with this Court. The defendants direct the court to that paragraph to lay the foundation for coverage, believing those items not to be in dispute, but do support AMCO's promise to pay. The references hereafter to bates stamped "DEP/AMCO" followed by a number refer to the bates stamp contained on the insuring document, Exhibit R.

The ambiguity lies within the following two sections:

> **DEFINITIONS** *[DEP/AMCO 0706]*
> \*\*\*
> **C.    Applicable to Coverage B Only**
> **As used in this Coverage B:**
> **9.**    *"Personal and advertising injury" means injury*, including consequential "bodily injury", *arising out of one or more of the following offenses committed in the course of your business*:
> \*\*\*
> > **f.**    *discrimination*, unless insurance coverage therefore is prohibited by law or statute.
> \*\*\*
> *[DEP/AMCO 0710]*
>
> **EXCLUSIONS**
>
> **A.    Applicable to Coverage A and Coverage B**
> \*\*\*
> 8.    Employment-related Practices
> "Injury or damage", "bodily injury" or *"personal and advertising injury" to*:
> > **a.**    *A person arising out of any*:
> > \*\*\*
> > **3)**    *Employment related practices*, policies, acts or omissions, *such as* coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, *discrimination* or malicious prosecution directed at that person;  . . .
> *[DEP/AMCO 0699]*

The provisions within the Definitional section and the Exclusions section which provide the contradiction and ambiguity are italicized and underlined to help the Court better understand the argument and such emphasis is not contained within the original document.

## MISSOURI LAW AS APPLIED TO THE POLICY

When a federal court is sitting in diversity jurisdiction, such as the case here, it applies the forum state's substantive law to any state law claims. *May v. Nationstar Mortg., LLC*, 852 F.3d 806, 813-14 (8th Cir. 2017); *Bazzi v. Tyco Healthcare Grp., LP*, 652 F.3d 943, 946 (8th Cir. 2011). All issues here involve state law claims and therefore must be assessed under Missouri state law.

**In Missouri, if a contract promises something at one point and takes it away at another, there is an ambiguity.** *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. banc 2009) (emphasis added); *Chamness v. Am. Fam. Mut. Ins. Co.,* 226 S.W.3d 199, 204 (Mo. App. 2007). "Specifically, if another insurance clause appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous, and the ambiguity will be resolved in favor of coverage for the insured." *Chamness*, at 204, quoting *Seeck v. Geico General Ins. Co.,* 212 S.W.3d 129, 134 (Mo. banc 2007). Ambiguities also exist when there is "duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010); *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009); *accord Am. Fam. Mut. Ins. Co. v. Ragsdale*, 213 S.W.3d 51, 55 (Mo. App. W.D. 2006); *Maher Bros., Inc. v. Quinn Pork, LLC,* 512 S.W.3d 851, 856 (Mo. App. 2017); *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. App. E.D. 1993). Where provisions of an insurance policy are ambiguous, they are construed against the insurer and in favor of the insured. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993); *Maher Bros., Inc. v. Quinn Pork, LLC,* 512 S.W.3d 851, 855 (Mo. App. 2017); *Ragsdale*, at  54. When the language is ambiguous, the court applies "a meaning according to what the insured ordinarily would have understood, and because the insurer typically is responsible for the ambiguity, [the court] construe[s] ambiguous provisions against the insurer." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. App. W.D. 2008); *Seeck v. Geico General Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007); *Martin v. U.S.F&G.,* 996 S.W.2d 506, 508 (Mo. banc 1999). In Missouri, this rule, often referred to as the doctrine of "*contra proferentem,*" is more vigorously applied in insurance contracts than in other contracts. *Burns,* at 509 (Mo. banc 2010); *Long v. Shelter Ins. Companies*, 351 S.W.3d 692, 696 (Mo. App. W.D. 2011); *Mansion Hills Condominium Assoc. v. Am. Family Mut. Ins. Co.,* 62 S.W.3d 633, 637 (Mo. App. 2001).

Moreover, while the policy contains an exclusion which purports to exclude discrimination, that exclusion is in absolute conflict with the promise to pay for injuries arising from discrimination, as described in the definition section of the policy. **Missouri courts find definitions in policies to be controlling** as to the terms used within the policy. *Bowan v. General Security Indemnity Company of Arizona,* 174 S.W.3d 1, 5 (Mo. App. E.D.2005) (emphasis added). Where there is a conflict in an insurance policy, an ambiguity is created and the policy must be construed strictly against the insurer and in favor of coverage, since insurance contracts are designed to furnish protection and should be interpreted to grant coverage. *Id.* Insurance policy provisions designed to cut-down, restrict or limit insurance coverage already granted or introducing exceptions or exemptions must be strictly construed against the insurer. *Bush v. Shelter Mutual Insurance Company,* 412 S.W.3d 336, 339 (Mo. App. W.D. 2013)(citing *Am. Std. Ins. Co. of Wisc. v. Stinson,* 404 S.W.2d 303, 308 (Mo. App. E.D. 2012)). In construing the terms of an insurance policy, the Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured. *Bush,* supra, at 339.

Furthermore, an insurer's duty to defend does not depend on whether the underlying petition makes allegations or has language affirmatively bringing the claims within the scope of the insurance. "To extricate itself from a duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage." *Truck Ins. Exch. v. Prairie Framing, LLC,* 162 S.W.3d 64, 79 (Mo. App. W.D.2005) (emphasis in original; internal citations omitted). The insurer may refuse to defend only if the petition's allegations *preclude* any possibility of coverage. *Id.* at 83 (emphasis added). The insurer has a duty to defend if the petition alleges facts that give rise to a claim *potentially* within the policy's coverage. *See McCormack Baron Mgmt. Serv., Inc. v. Am. Guar. & Liab. Ins. Co.,* 989 S.W.2d 168, 170-71 (Mo. banc 1999). (emphasis added). An insurer,

however, cannot merely rest on the allegations contained within the petition. *See Stark Liquidation Company v. Florists' Mutual Ins. Co.,* 243 S.W.3d 385, 392 (Mo. App. E.D. 2007), *citing Truck Ins. Exch.,* 162 S.W.3d at 83. "Rather it must also consider the petition in light of facts it knew or could have reasonably ascertained." *Truck Ins. Exch.,* 162 S.W.3d at 83. "To suggest that the insured must prove the insurer's obligation to pay before the insurer is required to provide a defense would make the duty to defend provision a hollow promise." *McCormack Baron,* at 170, *quoting* 13 John A. Appleman & Jean Appelman, Insurance Law and Practice, section 4684 (rev. vol. 1976).

The above is just black letter insurance law in Missouri. It is clear when looking at the policy provisions and applying black letter law, that the AMCO policy is ambiguous in that it promises something at one point and takes it away at another and / or due to its duplicity and uncertainty it is ambiguous. Either way, because of this ambiguity, under Missouri black letter law, the policy must be construed against the insurance company drafter of the policy, and in favor of its insureds, especially in light of the controlling nature of the definitional section in policy interpretation. Defendants Columbia, MK and Hausman should be afforded coverage under this policy.

To simplify matters, let's address what is NOT at issue. It does not appear that the parties are in dispute about the following:

- There were two policies of insurance issued to Columbia, MK and Hausman;
- Columbia, MK and Hausman are insureds within the meaning of those policies;
- Barnett and Taylor were employed and within the scope of their employment with Columbia and Hausman, and Taylor with MK at the time of the acts at issue;
- Hausman, and through him, Columbia and MK, were within the scope and course of employment when the alleged events occurred;
- Barnett and Taylor both made claims of discrimination against Hausman and his companies;
- Under these facts within the four corners of the Depositors' policy, there does not appear to be coverage;

8

- The definition of advertising injury in the Depositors' policy and the AMCO policy are different;
- The AMCO policy, under coverage B, provides coverage only when there is no underlying coverage *(Exh. R- AMCO policy, pg DEP/AMCO 0696, B. 5.).*

What does appear to be at issue is the exclusionary language on page DEP/AMCO 0699 of AMCO's policy. Plaintiffs would have this Court believe that all exclusions apply all the time. However, Missouri law on exclusions as it would pertain to this case, is quite different than they have represented. The court in *Maher Bros., Inc. v. Quinn Pork, LLC,* 512 S.W.3d 851 (Mo. App. 2017), recognized the long-settled law as applied to exclusions:

> Exclusions in insurance contracts are to be strictly construed, and ambiguous terms are construed in favor of the insured. *Chase Resorts, Inc.*, 869 S.W.2d at 149, 150. "Because the scope of the exclusion clause in the policy is ambiguous, it should be construed narrowly in favor of providing coverage." *Harrison v. Tomes*, 956 S.W.2d 268, 270 (Mo. banc 1997). In addition, "unless the contract is so clear and unequivocal in its meaning that it necessarily, as a matter of law, precludes plaintiff's recovery, a motion for summary judgment based on an interpretation of the contract should be denied." *Pruitt v. Farmers Ins. Co.*, 950 S.W.2d 659, 664 (Mo. App. S.D. 1997). Here, the language of the exclusion at issue as it applies to the facts of this case is not "so clear and unequivocal" that it necessarily precludes Appellant's recovery, and summary judgment was improperly granted with respect to this particular exclusion.

*Id.,* at 857. Likewise, in *Burns v. Smith*, the Missouri Supreme Court recognized the problem with exclusions in an insurance policy and made it clear that "Missouri also *strictly* construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies." *Burns,* at 509–10, citing, *Aetna Cas. & Sur. Co. v. Haas,* 422 S.W.2d 316, 321 (Mo. banc 1968); *Crossman v. Yacubovich,* 290 S.W.3d 775, 779 (Mo. App.2009); *McRaven v. F–Stop Photo Labs, Inc.,* 660 S.W.2d 459, 462 (Mo. App.1983).

In short, the Missouri Supreme Court in *Burns* provides an excellent summary:

> [A]n insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it. Hence, if the terms are susceptible of two possible interpretations and there is room for construction, **provisions limiting, cutting down, or avoiding liability on the coverage made in the policy are construed most strongly against the**

**insurer.** *Farm Bureau Town and Country Ins. Co. of Mo. v. Schmidt,* 751 S.W.2d 375, 376 (Mo. banc 1988) *quoting, Varble v. Stanley,* 306 S.W.2d 662, 664–665 (Mo.App.1957); *Martin,* 996 S.W.2d at 508 (Mo. banc 1999); *see also Seeck,* 212 S.W.3d at 132.

Missouri adopted this approach in reliance on the sound reasoning of Judge Learned Hand:

[T]he canon *contra proferentem* is more rigorously applied in insurance than in other contracts, in recognition of the difference between the parties in their acquaintance with the subject matter .... insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion.

*Gaunt v. John Hancock Mut. Life Ins. Co.,* 160 F.2d 599, 602 (2d Cir.1947) (Hand, J.), *followed in Krombach,* 827 S.W.2d at 211 (Mo. banc 1992).

*Burns v. Smith,* 303 S.W.3d 505, 512 (Mo. banc 2010)(emphasis added).

## MISSOURI LAW AND ESTOPPEL AS APPLIED TO THIS CASE

Under Missouri law there is an implied covenant of good faith and fair dealing in every contract. *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. App. W.D. 2000).  It implies the duty of one party "to cooperate with the other party to a contract to enable performance and achievement of the expected benefits" and is an enforceable contract right.  *Id.*  "A party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies the other party the expected benefit of the agreement."  *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. App. E.D. 2012).  See also, *Mo. Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 46 (Mo. App. W.D. 2002).  It is the existence of a fiduciary relationship between insurer and insured, aside from insurer's subsisting implied covenant of good faith and fair dealing under the insurance policy, that exposes an insurer to tort liability for failing to exercise good faith in evaluating and negotiating third-party claims against an insured. *Freeman v. Leader Nat'l Ins. Co.,* 58 S.W.3d 590, 598 (Mo. App. E.D. 2001). "To extricate itself from the duty to defend the insured,

the insurance company must prove that there is ***no possibility*** of coverage." *Truck Ins. Exch. v. Prairie Framing, LLC,* 162 S.W.3d 64, 79 (Mo. App. W.D. 2005) (emphasis in original).

In Missouri, it is well settled law that "an insurer, having denied liability on a specified ground, may not thereafter deny liability on a different ground." *Brown v. State Farm Mut. Auto. Ins. Co.*,776 S.W.2d 384, 386 (Mo. 1989); *Stone v. Waters,* 483 S.W.2d 639, 645 (Mo. App. 1972). It relates as far back as 1931 to a case *Goffe Ash-Grove Lime Portland Cement Co. v. Southern Surety Co*., 39 S.W.2d 434, 441 (Mo. App. 1931), which states, "It is the rule in this state that when an insurance company denies liability and states the ground, or grounds, for such denial, it waives all grounds not so specified." *Goffe* was corrected by the court in *Brown* on its inference that prejudice is an element of waiver, but otherwise stands with "waiver" and "estoppel" terminology clarified in *Brown*. See, *Brown, Id.* See also, *State Farm Mutual Automobile Ins. Co. v. Central Surety and Ins. Corp.,* 405 S.W.2d 530, 532 (Mo. App. 1966). ("[H]aving denied liability for a stated reason, an insurer may not later assert a different one."); *Morris v. Reed,* 510 S.W.2d 234, 240 (Mo. App. 1974). ("[O]nce an insurer denies liability on a given ground, it may not thereafter defend on a different ground."); *State ex rel. Shelter Mut. Ins. Co. v. Crouch,* 714 S.W.2d 827 (Mo. App. 1986). ("It is often stated that if an insurer denies liability upon a specified ground or defense, all other grounds or defenses are waived."). On first party claim, when insurer chooses one basis for denying claim, it cannot later change to another basis. "By specifying a certain or particular defect or defects in proofs of loss, it has been held that an insurer waives all other defects therein." Lee R. Russ in consultation with Thomas F. Segalla, 13 Couch on Ins. § 196:6 (2006). The rationale of the rule is as follows:

> Insistence that insurers be specific in their objections accomplishes several worthy objectives, most notably preventing insureds from expending time and effort in meeting the insurer's initial objection, only to be met by a different objection. In essence, the insurer is being required to set the boundaries of any future dispute

and litigation, in much the same manner that litigants are required to raise or lose affirmative defenses.

As acknowledged in *Stone,* "In *Hammeyer v. Concordian Telephone Company*, 446 S.W.2d 486, the insurer first advanced a sole reason for no coverage that the policy excluded 'complete operations' of its insured shortly after the injury to Mrs. Kammeyer and before she filed suit. At trial in the garnishment action, a second reason that the policy covered a partnership and the injury resulted from individual operations of Troy Brooks was advanced. As to this additional defense, the court said, 'Having denied coverage on a specified ground, appellant may not thereafter deny coverage on a different ground.'" *Stone v. Waters*, 483 S.W.2d 639, 645 (Mo. App. 1972). If the terms of the policy have been waived by the conduct and course of business of the insurance company, they no longer constitute any part of the policy. See, *Pitt v. Leonberger*, 528 S.W.3d 1 (Mo. App. 2017).

AMCO Insurance Company is clearly precluded from asserting any exclusions it has raised to defeat coverage. An insurer who denies coverage is obligated to fairly apprise the insured of the bases of denial. *Sauvain v. Acceptance Indemnity Co.,* 339 S.W.3d 555, 562 (Mo. App. W.D. 2011). Where an insurer takes the position there is or may be no coverage, the insurer cannot explain its position to the insured in a vague manner, but must specifically relate policy provisions and must clearly and unambiguously explain how the policy provisions defeat coverage, analyzing the policy and facts, explaining why the policy does not apply. *Advantage Buildings & Exteriors v. Mid Continent Cas. Co.,* 449 S.W.3d 16, 22-25 (Mo. App. W.D. 2014). Industry standards also require such clarity. See, *SUMF* ¶ 15-21 and *Exh. K*, Affidavit of Wayne Taff.

AMCO Insurance Company's initial denial of coverage under the Umbrella Liability Policy dated April 19, 2019[1] fails to meet the requirements cited immediately above. The 13 page denial letter sets forth a laundry listing of policy provisions with no analysis to the facts, or between policy provisions, and then concludes by stating:

> In order for there to be coverage under Coverage B of the Commercial Umbrella Liability Insurance policy, there must be "bodily injury", "property damage" or "personal and advertising injury" from an "occurrence" or defined offense which takes place with the policy period. While Mr. Barnett does claim a "personal and advertising injury", as an employee of Columbia, his damages are excluded.

See, *SUMF* ¶ 5 & 20; *Exhs. I and J, 4/19/19 denial letters, pg 13, highlighted for the Court and Exh. K, Affidavit of Wayne Taff.* The above summation made no logical sense whatsoever to Defendants Columbia, MK and Hausman's lawyer, Mr. Wyrsch, or to a 43-year veteran insurance company consultant, analyst, trainer and educator, having advised and consulted in hundreds of instances with over 25 different insurers, Mr. Taff. See, *SUMF* ¶ 5 & 21; *Exhs. I and J, 4/19/19 denial letters and Exhibit O, Wyrsch Letter of May 23, 2019, 3rd paragraph, line 4; Exhibit K, Affidavit of Insurance Industry Expert Wayne Taff, ¶ 3, 4, 5, 6, 7, 8 and 21.* If <u>they</u> cannot follow the logic, it is clearly not something that a lay person could understand, which is absolutely required by law. The summation does state that Barnett and Taylor's claims were covered, but then simply concludes that their "damages" were not. What does that mean? And what is it based upon? Certainly nothing in the policy provisions applies just to their damages as being excluded. Having so badly botched this initial explanation, under Missouri law, AMCO is foreclosed from using any basis for denial of coverage in this case.[2]

---

[1] It is telling that this letter is nowhere to be found in plaintiffs' motion for summary judgment or statement of facts. One can only assume that the omission was in an effort to lead this Court to believe that the first letter denying coverage was Mr. Watters' letter of July 26, 2019, when they clearly knew that such was not the case.

[2] One could say any basis other than the summation in the 4/19/19 letter, but since that is nonsensical and clearly not understandable by a lay person, their first denial can't be used and according to the law, that is the only basis for denial allowed.

13

**CONCLUSION**

The AMCO policy, under Coverage B, clearly and unequivocally defines "personal and advertising injury" to include discrimination unless coverage is prohibited by law.  Coverage is not prohibited in Missouri. Based on the Insuring Agreement's promise to pay for injuries and damages arising out of "personal and advertising injury," defined to include discrimination, it is very clear the efforts of AMCO Insurance Company to cut-down, restrict or limit that promise based on exceptions or exemptions were ineffective, contradictory and therefore ambiguous. The policy must be interpreted in favor of coverage. Even if this Court were to find the policy unambiguous, coverage should still be found under the estoppel theory as set forth above. In the letter of 4/19/19 the insurer admitted that the discrimination claims asserted were, in fact, "personal and advertising injury" within the meaning of the policy.  The denial letter did not remotely explain how the policy could both promise to pay for injuries which it admitted fell within its promise to pay for injuries and damages arising from discrimination, while simultaneously claiming that it had made no such promise.  Moreover, the denial letter did not attempt to explain how or why the laundry list of exclusions applied. In addition to being wrong, the denial was confusing, unclear and ambiguous and could not be understood by an ordinary layman.  AMCO Insurance Company is estopped from asserting grounds for denial which were not properly raised and explained in the original denial letter. As was recognized by this Court in granting defendants an extension of time in which to answer this motion for summary judgment, in Missouri, when an insurer denies liability on a specified ground, it may not thereafter deny liability on a different ground.  *Brown v. State Farm Mut. Auto. Ins. Co.,* 776 S.W.2d 384, 386 (Mo. banc 1989).

WHEREFORE, Defendants Barnett and Taylor respectfully request that this Court first and foremost grant defendants' motion to dismiss and allow this decision to be made by the courts most familiar with this law, the Missouri courts, but if this Court is not inclined to do so,

defendants' request that that this Court grant  defendants' motion for summary judgment finding

coverage and award them costs and expenses and deny plaintiffs' motion for summary judgment

and for such other and further relief as this Court deems just and proper.


                                        Respectfully Submitted,

Dated: October 15, 2020                 **The Law Offices of Gretchen Myers, P.C.**
                                        */s/ Gretchen Myers*
                                        Gretchen Myers, #32219 (MO)
                                        222 S. Central Ave., Suite 675
                                        St. Louis, Missouri 63105
                                        Telephone: (314)621-5454
                                        Facsimile: (314)621-2868
                                        gmyers@gmyerslaw.com
                                        *Attorney for Defendants*
                                        *Harold Barnett and Charles Taylor*


                    <u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that a copy of the foregoing was electronically filed and
served via the Court's electronic filing system this, the 15th day of October 2020 to:

James Wyrsch, # 53197                   Russell F. Watters, #25758
911 Washington Avenue, Suite 211        John D. Cooney, #61080
St. Louis, MO 63101                     Brown & James, P.C.
314-288-0777                            800 Market Street, Suite 1100
james.wyrsch@kwlawstl.com               St. Louis, MO 63101
*Attorneys for Defendants*              (314) 421-3400
*Columbia Maintenance Co.,*             rwatters@bjpc.com
*MK Maintenance LLC, and*               jcooney@bjpc.com
*William Hausman*                       *Attorneys for AMCO and Depositors*