**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMCO INSURANCE COMPANY, and DEPOSITORS INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:19-cv-02202-SRC |
| vs. | ) | |
| | ) | |
| COLUMBIA MAINTENANCE COMPANY, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum and Order**

This matter comes before the Court on several pending motions.  Defendants Charles Taylor and Harold Barnett filed renewed motions to stay or dismiss the case under the *Brillhart/Wilton* abstention doctrine.  Doc. 53.  Subject to the Court's ruling on the motion to dismiss or stay, Plaintiffs and Defendants have filed cross motions for summary judgment.  Docs. 38, 61.  And, Plaintiffs move to exclude the testimony and opinions of Defendants' expert.  Doc. 59.

**I.      Facts and background**

This declaratory judgment action arises from an insurance coverage dispute the plaintiff insurance companies filed against various defendants.  Taylor and Barnett are former employees of Columbia Maintenance Company.   William Hausman is Columbia Maintenance Company's sole owner.[1]  Prior to the filing of this action, Taylor and Barnett initiated separate employment discrimination lawsuits in state court against Hausman, Columbia Maintenance, and MK

---

[1] On December 11, 2020, counsel for the Columbia Defendants filed a Suggestion of Death, notifying the Court of the death of Defendant William Hausman.  Doc. 72.  To date, no party has moved to substitute Hausman's estate in this action.

1

Maintenance, LLC, another entity owned by Hausman (collectively, the "Columbia Defendants"). Barnett's suit alleged that Hausman fired him because of his race. *Barnett v Columbia Maintenance Co., et al.*, Case No. 15SL-CC04351 (21st Judicial Circuit, St. Louis County Court.). Taylor's suit alleged that Hausman fired him in retaliation for his complaints about Hausman's racially-discriminatory behavior and comments. *Taylor v Columbia Maintenance Co., et al.*, Case No. 16SL-CC00217 (21st Judicial Circuit, St. Louis County Court).

Plaintiffs AMCO Insurance Company and Depositors Insurance Company both issued policies of insurance to Columbia Maintenance. The Columbia Defendants tendered both state court actions to AMCO and Depositors, demanding that AMCO and Depositors defend and indemnify them under the insurance policies. AMCO and Depositors responded by disclaiming coverage for or duty to defend the Columbia Defendants in the state court actions.

AMCO and Depositors then filed the instant action pursuant to 28 U.S.C. § 2201, seeking a declaration that they do not owe a duty to indemnify or defend the Columbia Defendants under the insurance policies.

### A.     Insurance policies

As noted above, two insurance policies are at issue in this case. Depositors issued to Columbia Maintenance a Commercial General Liability insurance policy (the "Depositors CGL Policy"). AMCO issued to Columbia Maintenance a Commercial Umbrella Liability insurance policy (the "AMCO Umbrella Policy"). The parties do not dispute that Hausman and Columbia Maintenance are "insureds" under the policies. Further, the parties do not dispute that Hausman and Columbia Maintenance fulfilled all of their obligations under the insurance policies, including payment of premiums, or that the acts alleged in Taylor and Barnett's state court

petitions occurred during the policy period.  Instead, Defendants contend that the AMCO

Umbrella Policy is ambiguous because it appears to grant coverage with one provision but take it

away with another.  The Court therefore quotes at length the applicable policy provisions.

### 1.     Depositors CGL Policy

Subject to certain exclusions, the Depositors CGL Policy provides insurance coverage for

"bodily injury," "property damage," and "personal and advertising injury."  In relevant part, the

policy provides:

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay
as damages because of "bodily injury" or "property damage" to which this
insurance applies.  We will have the right and duty to defend the insured
against any "suit" seeking those damages.  However, we will have no duty
to defend the insured against any "suit" seeking damages for "bodily injury"
or "property damage" to which this insurance does not apply. We may at
our discretion investigate any offense and settle any claim or "suit" that may
result.

. . .

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an
"occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy
period

. . .

COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay
as damages because of "personal and advertising injury" to which this
insurance applies.  We will have the right and duty to defend the insured
against any "suit" seeking those damages.  However, we will have no duty
to defend the insured against any "suit" seeking damages to which this

insurance does not apply.  We may at our discretion investigate any offense and settle any claim or "suit" that may result.

b.     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Doc. 40-1.  The Depositors CGL policy also includes an endorsement entitled

"EMPLOYMENT-RELATED PRACTICES EXCLUSION."  Doc. 40-2.  This exclusion

provides that the insurance policy "does not apply" to:

"Bodily injury" to:

(1)     A person arising out of any:

(a)     Refusal to employ that person;
(b)     Termination of that person's employment; or
(c)     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person

. . .

"Personal and advertising injury" to:

(1)     A person arising out of any:

(a)     Refusal to employ that person;
(b)     Termination of that person's employment; or
(c)     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person

*Id.*  The Depositors CGL Policy includes definitions of pertinent terms.  This section provides in

pertinent part:

Section V – Definitions

. . .

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

14.     "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

   a.    False arrest, detention or imprisonment;
   b.    Malicious prosecution;
   c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor.
   d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;
   f.    The use of another's advertising idea in your "advertisement"; or
   g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement."

Doc. 40-1.

## 2.      AMCO Umbrella Policy

The AMCO Umbrella Policy includes an "Umbrella Liability Insurance" provision,

which provides in relevant part:

> [W]e will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence".
>
> . . .

8.      This insurance applies to "bodily injury" and "property damage" only if:

a.      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

Doc. 40-3.  The AMCO Umbrella Policy includes an "Employment-related practices" exclusion that is substantively identical to the Depositors CGL Policy exclusion.  *Id.*  The AMCO Umbrella Policy exclusion provides in relevant part:

[T]his insurance does not apply to:

. . .

"[B]odily injury" or "personal and advertising injury" to:

a.      A person arising out of any:

1)      Refusal to employ that person;
2)      Termination of that person's employment; or
3)      Employment-related practices policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person

*Id.*  The AMCO Umbrella Policy also includes the following pertinent definitions:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Bodily injury" means physical injury, sickness or disease to a person and, if arising out of the foregoing, mental anguish, mental injury, shock or humiliation, including death at any time resulting therefrom.

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses committed in the course of your business:

a.      False arrest, detention or imprisonment;
b.      Malicious prosecution;
c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor.
d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

6

> e.   Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f.   Discrimination, unless insurance coverage therefore is prohibited by law or statute;
>
> g.   The use of another's advertising idea in your "advertisement"; or
>
> h.   Infringing upon another's copyright, trade dress or slogan in your "advertisement."

*Id.*

### B.   Denials of coverage

Taylor filed the original petition in his employment discrimination suit against Hausman and Columbia Maintenance in 2015.  Barnett filed the original petition in his suit the following month.  In February 2019, counsel for the Columbia Defendants notified AMCO and Depositors of these pending lawsuits and requested coverage and defense of the claims.  AMCO and Depositors disclaimed coverage or duty to defend the suits of Barnett or Taylor by denial letters sent in April 2019.  Docs. 58-9, 58-10.  The April 2019 denial letters stated that neither the Depositors CGL Policy nor the AMCO Umbrella Policy covered the claims.  Regarding the Depositors CGL policy, the letters stated:

> Columbia's policy is also endorsed with [an] Employment-Related Practices Exclusion.
>
> . . .
>
> With this additional exclusion, any claims for employment related practices are not covered.  Because [Mr. Barnett/Mr. Taylor] claims these matters arise out of his employment, there is no coverage under the Commercial General Liability Policy.

*Id.*  And regarding the AMCO Umbrella Policy the letters stated:

> [T]he Commercial Umbrella Liability Insurance policy would only apply to claims for "bodily injury", "property damage" or "personal and advertising injury" caused by an "occurrence" or an offense as defined by the policy.  Even if coverage was afforded under Coverage B, there are policy exclusions that would apply to bar coverage.

*Id.* The denial letters then quoted several exclusions directly from the policy, beginning with the "Employment-related Practices" exclusion. *Id.* The letters concluded:

> In order for there to be coverage under Coverage B of the Commercial Umbrella Liability Insurance policy, there must be a bodily injury", "property damage" or "personal and advertising injury" from an "occurrence" or a defined offense which takes place within the policy period. While [Mr. Barnett/Taylor] does claim a "personal and advertising injury", as an employee of Columbia, his damages are excluded.

*Id.*

A month after AMCO and Depositors denied coverage, Barnett and Taylor both filed amended petitions in state court. Counsel for the Columbia Defendants notified AMCO and Depositors of the amended petitions, and again requested coverage and defense of the claims. AMCO and Depositors, through counsel, again denied coverage in July 2019. The July 2019 denial letter stated in relevant part:

> The First Amended Petitions also do not allege "personal and advertising injury" as such is defined in the Depositors CGL policy. Further, as outlined in [the April 2019 denial letter], even if they were deemed to allege "personal and advertising injury," the "Employment Related Practices Exclusion" endorsement serves to bar coverage for "personal and advertising injury" in this context as well.

> With respect to the AMCO Umbrella Policy…the First Amended Petitions do not allege "bodily injury" "property damage" or "personal and advertising injury" caused by an occurrence as such is defined in the AMCO Umbrella Policy. Further, to the extent there [were] allegations of "bodily injury" "property damage" or "personal and advertising injury" caused by an "occurrence," which there is not, the "Employment Related Practices Exclusion" would act as a complete bar to coverage under the AMCO Umbrella policy in this context.

Doc. 40-7.

### C. Procedural background

After AMCO and Depositors filed this declaratory judgment action, Barnett, Taylor, and the Columbia Defendants each filed separate motions to dismiss, asking the Court to exercise its discretion as permitted by 28 U.S.C. § 2201 and abstain from hearing the case. Docs. 14, 16, 26.

Before this Court ruled on those pending motions to dismiss, Barnett and Taylor voluntarily dismissed their state-court suits against the Columbia Defendants and agreed to submit their employment disputes with the Columbia Defendants to binding arbitration. Arbitration took place in early 2020.  AMCO and Depositors attended but were not parties to the arbitration.

A month after the arbitration concluded, this Court denied Defendants' motions to dismiss.  Doc. 34.  The Court found that no parallel state court proceeding existed, so the six-factor test from *Scottsdale Insurance Company v. Detco Industries, Inc.*, 426 F.3d 994 (8th Cir. 2005), applied.  The Court found the *Scottsdale* factors weighed against abstention, and thus denied the motions to dismiss.  Doc. 34.  The Court further observed that "this case involves a routine insurance-policy construction dispute."  *Id.*

Shortly thereafter, AMCO and Depositors filed a motion for summary judgment, arguing that the terms of the insurance policies clearly and unambiguously excluded coverage for Barnett and Taylor's employment discrimination claims.  Doc. 38.  Per Local Rule 4.01(F), Defendants' response in opposition was due within 21 days.  Four days before the deadline, Barnett and Taylor moved, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, for additional time to conduct discovery before responding to the motion for summary judgment.  Doc. 44. They argued that document discovery and depositions were necessary to develop defendants' affirmative defenses and suggested that they might "need to engage an expert … in order to explain the import of the documents produced and the deposition testimony."  Doc. 45.  During the Rule 16 conference held two days later, counsel for Barnett and Taylor also represented to the Court that her case file was temporarily unavailable to her because she was working from home amidst the COVID-19 pandemic and health concerns precluded her from going to her office to obtain the file.

On June 4, 2020, the Court partially granted defendants' request for extension to allow discovery, extending defendants' deadline to respond to AMCO and Depositors' motion for summary judgment to October 15, 2020.  Doc. 50.  From the record available to the Court, it appears relatively little discovery took place during this four-month extension.  AMCO and Depositors now represent to the Court that Barnett and Taylor took no depositions and served a total of seven interrogatories and six requests for production on the plaintiffs.  Doc. 55.  Barnett and Taylor did retain an insurance "expert," attorney E. Wayne Taff, whose affidavit they rely on in opposing the motion for summary judgment.  AMCO and Depositors have moved to exclude Taff's opinions under Rule 702 of the Federal Rules of Evidence.  Doc. 59.

Barnett and Taylor took only minimal discovery in this case, but they were busy in the state court.  Barnett and Taylor's arbitration with the Columbia Defendants resulted in arbitration awards of $11,437,009.90 and $8,556,183.72 in favor of Barnett and Taylor, respectively. Barnett and Taylor submitted the arbitration awards to the state court and the court confirmed the awards as judgments.  On September 29, 2020—just two weeks before their extended deadline to oppose the summary judgment motion—Barnett and Taylor filed separate state-court petitions for declaratory judgment and equitable garnishment to enforce the judgments against AMCO and Depositors.  *See* Docs. 54-1, 54-2.

Three days later, on October 2, 2020, Barnett and Taylor filed renewed motions to dismiss or stay this case, again asking the Court to exercise its discretion as permitted by 28 U.S.C. § 2201 to abstain from hearing this declaratory judgment action.  Doc. 53.  Barnett and Taylor filed their opposition to AMCO and Depositors' motion for summary judgment on the deadline, and separately filed a cross-motion for summary judgment on coverage.  Docs. 57, 61. The Columbia Defendants join Barnett and Taylor's opposition briefing and cross-motion for

summary judgment.  Docs. 64, 71.  As noted above, AMCO and Depositors move to exclude the opinions of Barnett and Taylor's insurance expert.  Doc. 59.  All motions are fully briefed and ready for disposition.  The Court first considers Barnett and Taylor's motion to dismiss or stay.

## II.   Motion to dismiss or stay

The Court denied Defendants' first motion to dismiss upon finding that no parallel state court action existed, and that the *Scottsdale* factors weighed against abstention.  Doc. 34. Barnett and Taylor now renew their motion to dismiss, Doc. 53, arguing that their separate garnishment suits are "a parallel proceeding in state court."  Doc. 54 at 5.  The Columbia Defendants join Barnett and Taylor's motion to dismiss.  Doc. 64.  The Eighth Circuit's six-factor *Scottdale* test applies when no parallel state court proceeding exists.  426 F.3d at 999. Thus, Barnett and Taylor argue that *Scottsdale* no longer applies to this case and the Court should instead consider their renewed motion to dismiss under *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), and *Wilton v. Seven Falls Company*, 515 U.S. 277 (1995).

AMCO and Depositors oppose the motion to dismiss on two grounds.  First, they argue that Barnett and Taylor's separate garnishment actions do not constitute a single "parallel proceeding" under *Scottsdale* because neither of the garnishment actions include all the same parties as the present case.  Second, AMCO and Depositors argue that—even if the garnishment actions are parallel proceedings under *Scottsdale*—the Court can and should exercise its jurisdiction under 28 U.S.C. § 2201 in the interest of judicial economy.

"Suits are parallel if 'substantially the same parties litigate substantially the same issues in different forums.'" *Scottsdale*, 426 F.3d at 997 (quoting *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991).  AMCO and

11

Depositors contend that neither of the individual garnishment actions include "substantially the same parties" as this case because Barnett and Taylor are not parties to the other's state court suit, i.e., Taylor is not a party in Barnett's case and vice versa.  Barnett and Taylor respond that, collectively, the state court actions involve substantially the same parties litigating substantially the same issues.  Neither party cites any controlling law on the issue of whether separate state court suits can constitute parallel proceedings under *Scottsdale*.  Regardless, the Court finds it need not reach this question, because even if the suits are parallel, abstention in this case does not serve the interest of judicial economy, and the Court finds no basis to reward the outright gamesmanship of counsel for Barnett and Taylor.

In *Brillhart*, the Supreme Court held it was not an abuse of discretion for the district court to decline jurisdiction over a declaratory judgment action on insurance coverage in the face of a pending state court garnishment action.  316 U.S. at 494.  In dicta, the Court stated:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.

*Id.* at 495.  The Supreme Court revisited the issue of abstention from declaratory judgment actions in *Wilton*.  515 U.S at 290.  The Court held, where there are parallel state court proceedings, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close."  *Id.* at 288.

After *Brillhart* and *Wilton*, the Eighth Circuit has consistently affirmed a district court's choice to stay or abstain from declaratory judgment actions in the face of parallel state court proceedings.  *See, e.g., Horne v. Firemen's Ret. Sys. of St. Louis*, 69 F.3d 233, 236 (8th Cir. 1995); *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 796 (8th Cir. 2008).  The picture is somewhat more complicated where district courts have *declined* to stay or dismiss a case despite

parallel state court proceedings.  In *Capitol Indemnity Corporation v. Haverfield*, 218 F.3d 872 (8th Cir. 2000), the Eighth Circuit held that a district court abused its discretion in denying a motion to dismiss or stay the federal action in favor of parallel state court proceeding.  *Id.* at 875.

Barnett and Taylor argue that *Haverfield* requires this Court to abstain from exercising jurisdiction over this case.  But the Eighth Circuit has subsequently limited *Haverfield's* scope. In *Lexington Insurance Company v. Integrity Land Title Co.*, 721 F.3d 958, (8th Cir. 2013), the Court noted that "it is relatively uncommon for reviewing courts to find discretion abused when a district court elects to exercise jurisdiction" and further observed that "[w]hen such abuses are found, there typically are distinguishing factors".  *Id.* at 972.  Regarding *Haverfield*, the *Lexington* Court noted that that case "involved an unsettled question of state law subject to a split in the state's own courts."  *Id.*  Thus,

> [The Court] determined that on such facts and in the face of an intrastate split, it was prudent to allow the state courts to resolve their own split of authority rather than having a federal district court issue a nonprecedential interpretation of the issue. Accordingly, an exercise of federal jurisdiction in *Haverfield* would have been a highly inefficient incursion by the federal courts into an area of state law that required clarification by the state's own courts.

*Id.* at 972–73.  In *Lexington*, the Eighth Circuit affirmed the district court's decision to exercise jurisdiction, finding no "distinguishing factors" like those in *Haverfield*.  *Id.* at 972.

After *Lexington*, cases in this Circuit and this District support the Court's exercise of jurisdiction in this case.  In *GEICO Casualty Corporation v. Isaacson*, 932 F.3d 721 (8th Cir. 2019), the Eighth Circuit affirmed the district court's decision to exercise jurisdiction despite parallel state court proceedings where "the motion for summary judgment was fully briefed by the time the state court action was filed and did not present complicated issues of state law," and, thus, the case lacked any "distinguishing factor" similar to *Haverfield*.  *Id.* at 725.  On these facts, the Eighth Circuit concluded that "the considerations of practicality, wise judicial

administration, and economy identified by the Supreme Court in *Brillhart* and *Wilton* support[ed] the district court's decision to grant a declaratory judgment." *Id.; see also Victoria Auto. Ins. Co. v. Rider*, No. 1:16-CV-289-SNLJ, 2018 WL 926564, at *4 (E.D. Mo. Feb. 16, 2018) (refusing to abstain in favor of soon-to-be-filed parallel state court action where federal declaratory judgment action had been pending for over a year and dispositive motion briefing was complete).

The Court finds that the considerations of practicality, wise judicial administration, and economy likewise weigh against abstention in this case, as they did in *GEICO*. Like *GEICO* and unlike *Haverfield*, the present case does not present any complicated or unsettled issues of state law. Rather, the Court has already found that "this case involves a routine insurance-policy construction dispute." Doc. 34. Further, the parties completed summary judgment briefing in this case shortly after Barnett and Taylor filed their state court actions. And, the only reason briefing was not complete months *before* commencement of the state court actions was due to Barnett and Taylor's dubious-in-retrospect request for extension. Finally, the Court finds that exercising its jurisdiction in this matter best serves judicial economy. This case has been pending for well over a year. Discovery and dispositive motion briefing are complete in this case, but the garnishment actions are newly-filed and not likely to reach disposition for many months. The same coverage issue now pending in two separate state actions is already ripe for a singular disposition in this Court. For these reasons, the Court denies [53] Barnett and Taylor's motion to dismiss or stay the case.

## III.     Cross-motions for summary judgment

The Court turns next to the parties' cross-motions for summary judgment. AMCO and Depositors move for summary judgment arguing that the clear terms of the insurance policies

14

exclude coverage for Barnett and Taylor's claims against the Columbia Defendants.  Doc. 38.

Barnett and Taylor also move for summary judgment, arguing that the policies cover their claims

against the Columbia Defendants based on the "uncontroverted material facts as applied to

Missouri law."  Doc. 61.  The Columbia Defendants join Barnett and Taylor's motion for

summary judgment.  Doc. 64.

### A.    Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant

a motion for summary judgment if all of the information before the court demonstrates that

"there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962).

This Court must construe the facts in the light most favorable to the nonmoving party, but it need

not accept a version of the events that "is blatantly contradicted by the record, so that no

reasonable jury could believe it."  *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010)

(quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Because "the interpretation and

construction of insurance policies is a matter of law, . . . such cases are particularly amenable to

summary judgment."  *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir.

1991).

Because this is a diversity case, the Court applies state substantive law and federal

procedural law.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie

R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).  The parties agree that Missouri substantive law

controls.

**B.     Discussion**

The parties do not dispute any material fact.  *See* Docs. 58, 68.  Instead, they dispute only

the application of Missouri law to those facts.  "Because this case involves only questions of law,

it is particularly appropriate for summary judgment."  *Cremona v. R.S. Bacon Veneer Co.*, 433

F.3d 617, 620 (8th Cir. 2006).

Under Missouri law, a court interpreting an insurance policy "gives the policy language

its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance."

*Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. 2017).  "If the

policy language is clear and unambiguous, it must be construed as written."  *Id.*  The language is

ambiguous "only if a phrase is 'reasonably open to different constructions.'"  *Id.* (quoting

*Mendenhall v. Prop. & Cas. Ins. Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. 2012)).  "Courts may

not create an ambiguity when none exists."  *Id.*

### 1.     Employment-related practices exclusion clearly applies.

Both the Depositors CGL Policy and AMCO Umbrella Policy include substantively-

identical employment-related practices exclusions.  In pertinent part, this exclusion provides that

the policies of insurance do not apply to claims of injury to:

> a.     A person **arising out of** any:
>
> 1)     Refusal to employ that person;
> 2)     Termination of that person's employment; or
> 3)     Employment-related practices policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person.

Docs. 40-2, 40-3 (emphasis added).  Barnett and Taylor's claims fall squarely within this

exclusion.

In *Capitol Indemnity. Corporation v. 1405 Associates, Inc.*, 340 F.3d 547 (8th Cir. 2003), the Eighth Circuit considered, under Missouri law, a nearly-identical employment-related practices exclusion in a policy of insurance.  *Id.* at 550.  The Eighth Circuit noted that "under Missouri insurance law, 'arising out of' has been interpreted 'to be a very broad, general and comprehensive phrase' meaning 'originating from' or 'having its origins in' or 'growing out of' or 'flowing from.'"  *Id.* (quoting *Colony Ins. Co. v. Pinewoods Enters., Inc.*, 29 F. Supp. 2d 1079, 1083 (E.D. Mo. 1998)).  Thus, "such exclusions bar coverage for 'virtually any claim arising out of the employment relationship.'"  *Id.* (quoting *Old Republic Ins. Co. v. Comprehensive Health Care Assocs., Inc.*, 2 F.3d 105, 109 (5th Cir. 1993)).  Accordingly, the Eighth Circuit held that the provision excluded coverage even though the events giving rise to suit occurred after termination of the plaintiff's employment.  *Id.* at 5505.

Here, Barnett and Taylor's claims indisputably "arise out of" their employment relationship with Hausman and Columbia Maintenance.  Barnett's suit alleges that Hausman fired him because of his race.  Doc. 68-3.  Taylor's suit alleges that Hausman fired him in retaliation for his complaints about Hausman's racially discriminatory behavior and comments.  Doc. 68-4.  Termination of employment is not only listed explicitly in the policy exclusion, it also inherently "arises out of" the employment relationship.  In fact, Defendants concede that all of the alleged discriminatory acts by Hausman that serve as the basis for their claims "were within the scope and course of employment when the alleged acts occurred."  Doc. 57 at 8.  Defendants further concede that "Barnett and Taylor were employed and within the scope of their employment … at the time of the acts at issue." *Id.*  Accordingly, the employment-related practices exclusion applies and bars coverage for Barnett and Taylor's claims.

**2.      Defendants do not oppose summary judgment as to Depositors.**

Defendants do not argue that Barnett and Taylor's claims fall outside the employment-related practice exclusion.  Instead, they argue that flaws in the language of the AMCO Umbrella policy and the denial letters preclude application of the AMCO Umbrella policy's employment-related practices exclusion under Missouri law.  Importantly, Defendants do not argue that the same flaws preclude application of the exclusion in the Depositors CGL Policy.  *See* Doc. 57 at 4 ("The Depositors' policy does not suffer from the same fatal flaw as is found in the AMCO policy."); *id.* at 15 ("AMCO Insurance Company is estopped from asserting grounds for denial which were not properly raised and explained in the original denial letter.").  In fact, Defendants' opposition does not meaningfully address the Depositors CGL policy at all.

Because Defendants do not respond to or oppose Depositors' argument for summary judgment based on the employment-related practices exclusion in the Depositors CGL policy, the Court grants summary judgment for Depositors.  *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes waiver of that argument").

**3.      AMCO Umbrella Policy is not ambiguous.**

Defendants oppose summary judgment for AMCO on two grounds.  First, Defendants contend that the employment-related practices exclusion in the AMCO Umbrella Policy conflicts with other language in the policy, creating an ambiguity that the Court must construe against AMCO.  Second, Defendants argue that AMCO is estopped from asserting the employment-practices exclusion to deny coverage because AMCO's initial denial letter failed to clearly apprise the Columbia Defendants of the reason for denial.

Defendants first argue that the AMCO Umbrella Policy is ambiguous.  The Court disagrees.  Defendants' argument rests on an oversimplification and misapplication of Missouri law.  Missouri courts have stated that "where one provision of a policy appears to grant coverage and another to take it away, an ambiguity exists that will be resolved in favor of coverage." *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 689 (Mo. 2009).  The AMCO Umbrella Policy's definition of "personal or advertising injury" includes "[d]iscrimination, unless insurance coverage therefore is prohibited by law or statute."  Doc. 40-3.  Defendants argue that the AMCO Umbrella Policy covers personal or advertising injuries, so the employment-related practices exclusion takes away coverage that another provision of the policy appears to grant.  Thus, Defendants argue, the policy is ambiguous under *Jones* and the Court must resolve the ambiguity favor of coverage.

The Court disagrees for two reasons.  First, Defendants' position would eviscerate well-settled Missouri law approving of insurance policy exclusions.  "Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies.  If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007).  The Missouri Supreme Court has observed:

> Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude from coverage otherwise covered risks.  While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent.

*Swadley v. Shelter Mut. Ins. Co.*, 513 S.W.3d 355, 357–58 (Mo. 2017).  The very *purpose* of an insurance policy exclusion is to carve out or exclude from coverage something that would otherwise be covered in the absence of the exclusion provision.  Defendants' interpretation would effectively render all exclusion provisions unenforceable in Missouri.

As noted above, Missouri law expressly approves of exclusion provisions that are clear and unambiguous within the context of the policy as a whole. *Id.* at 358. In *Custom Hardware Engineering & Consulting, Inc. v. Assurance Company of Amerjica*, 295 S.W.3d 557 (Mo. Ct. App. 2009), the Missouri Court of Appeals addressed a situation similar to the present case. The Court considered whether allegations in the complaint met an insurance policy's definition of "personal or advertising injury" and then considered whether any applicable exclusions barred coverage. *Id.* at 562-63. Under Defendants' theory, a conflict between the definition on the one hand and a policy exclusion on the other necessarily creates an ambiguity resulting in coverage. But that was not what the Court of Appeals decided. Instead, the Court held that, even if the allegations met the definition, the policy's exclusion for intentional conduct barred coverage. *Id.*

In sum, the principle of Missouri law upon which Defendants rely—i.e., that an insurance policy may not appear to grant coverage in one place but take it away in another, *Jones*, 287 S.W.3d at 689—does not prohibit clear and unambiguous exclusion provisions like the employment-related practices exclusion at issue here. In fact, Defendants do not cite a single case invalidating a clear and unambiguous exclusion provision on this basis. Instead, each case cited by Defendants for this principle involves the interpretation of policy-limit clauses in underinsured motorist cases.[2] *See Jones*, 287 S.W.3d at 690; *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007); *Chamness v. Am. Family Mut. Ins. Co.*, 226 S.W.3d 199, 202 (Mo. Ct. App. 2007). These cases do not hold that clear and unambiguous exclusion provisions are invalid, and the Court declines to so hold.

---

[2] Defendants acknowledge that underinsured motorist cases constitute a unique body of law in Missouri. *See* Doc. 57 at 9 ("[T]he history of enforcement of exclusions in UIM claims is a whole separate body of law in and of itself. It is very policy specific as to the actual language within each policy.").

Secondly, no actual conflict exists between the AMCO Umbrella Policy's definition of "personal or advertising injury" and the employment-related practices exclusion.  "An insured cannot create an ambiguity by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole."  *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. 2017). The policy defines "personal or advertising injury" to include "discrimination" that occurs in the course of the insured's business.  Doc. 40-3.  The employment-related practices exclusion excludes from coverage any injury arising out of "employment related practices" including "discrimination."  *Id.*  The exclusion does not nullify or render the definition meaningless.  The policy might yet cover a wide swath of possible discrimination, for example, discrimination against customers, vendors, etc.  But the exclusion clearly and unambiguously states that the policy does not cover *employment discrimination*.

Further, Defendants' argument that the definition and exclusion are in conflict depends on a false premise, i.e., that the policy provides coverage for all "personal or advertising injuries."  The policy provides in relevant part:

> [W]e will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" **covered by this insurance** which takes place during the Policy Period and is caused by an "occurrence".

Doc. 40-3 (emphasis added).  Thus, the policy expressly limits coverage to those personal or advertising injuries otherwise "covered by" the insurance.  *Id.*  Courts examining insurance policies "must endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. App. W.D. 2008).  To give reasonable meaning to the phrase "covered by this insurance" necessarily entails some personal or advertising injuries are *not* covered, as

expressly provided in the policy exclusions.  Accordingly, the Court finds that the employment-related practices exclusion does not conflict with the policy's definition of "personal or advertising injury."  In sum, the Court finds that the AMCO Umbrella Policy is not ambiguous, and the employment-related practices exclusion clearly excludes coverage for Barnett and Taylor's claims.

### 4. Denial letters clearly stated employment-related practices exclusion as basis for denial.

Finally, Defendants' oppose AMCO's motion for summary judgment because "[i]n Missouri, it is well settled law that 'an insurer, having denied liability on a specified ground, may not thereafter deny liability on a different ground.'"  Doc. 57 at 12 (quoting *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 386 (Mo. 1989)).  Defendants correctly state Missouri law, but this law is simply irrelevant here, because AMCO's denial letters clearly stated the employment-related practice exclusion as a basis for denial of coverage.

The parties dispute which of AMCO's denial letters is relevant to the Court's analysis. Defendants contend that the April 2019 letter is dispositive, because it is the first denial letter Barnett and Taylor received, and "[o]nce an insurer denies liability on a given ground, it may not thereafter defend on a different ground."  *Brown*, 776 at 388 (quoting *Morris v. Reed*, 510 S.W. 2d 234, 240 (Mo. Ct. App. 1974)).  AMCO responds that the July 2019 letters are properly at issue, because this action seeks a declaration that the AMCO Umbrella Policy does not cover the claims in Barnett and Taylor's *amended* petitions, which were filed after the April 2019 denial letters.  The Court finds it need not resolve this issue because both denial letters clearly deny coverage on the basis of the employment-related practices exclusion.

The April 2019 letters provided in relevant part:

[T]he Commercial Umbrella Liability Insurance policy would only apply to claims for "bodily injury", "property damage" or "personal and advertising injury" caused

by an "occurrence" or an offense as defined by the policy.  **Even if coverage was afforded under Coverage B, there are policy exclusions that would apply to bar coverage**.

Docs. 58-9, 58-10 (emphasis added).  The letters then immediately quoted several exclusions from the policy, beginning with the full text of the employment-related practices exclusion.  *Id.*  The letters concluded:

> In order for there to be coverage under Coverage B of the Commercial Umbrella Liability Insurance policy, there must be a bodily injury", "property damage" or "personal and advertising injury" from an "occurrence" or a defined offense which takes place within the policy period. **While [Mr. Barnett/Taylor] does claim a "personal and advertising injury", as an employee of Columbia, his damages are excluded.**

*Id.* (emphasis added).  The letters clearly state that "there are policy exclusions that would apply to bar coverage" and specifically list the employment-related practices exclusion as one such exclusion.  *Id.*  The conclusion paragraph reiterates that Barnett and Taylor's claims are "excluded" from coverage even if they constitute a personal or advertising injury under the policy.  The Court finds these provisions clearly and adequately apprised Barnett and Taylor that AMCO denied coverage under the Umbrella Policy on the basis of the employment-related practices exclusion.

The July 2019 letter is equally, if not more, clear.  That letter stated in relevant part:

> With respect to the AMCO Umbrella Policy…the First Amended Petitions do not allege "bodily injury" "property damage" or "personal and advertising injury" caused by an occurrence as such is defined in the AMCO Umbrella Policy.  Further, to the extent there [were] allegations of "bodily injury" "property damage" or "personal and advertising injury" caused by an "occurrence," which there is not, the "Employment Related Practices Exclusion" would act as a complete bar to coverage under the AMCO Umbrella policy in this context.

Doc. 40-7.  The July 2019 letter clearly communicates the employment-related practices exclusion as a reason for denial.

Despite the denial letters' unambiguous references to the employment-related practices exclusion cited here, Defendants contend that AMCO is nevertheless estopped from asserting the exclusion because the April 2019 letter was "confusing." Doc. 57 at 15.  Defendants argue that the letter was deficient because it "did not attempt to explain how or why the laundry list of exclusions applied."  *Id.*  For this reason, Defendants boldly assert that AMCO is "precluded from asserting *any* exclusions it has raised to defeat coverage."  *Id.* (emphasis added).  The Court finds that Defendants' argument has no basis in Missouri law.  Defendants cite no case holding an insurer estopped from asserting a policy exclusion because the denial letter was "confusing" or failed to adequately "explain" the denial.  The only case Defendants cite for their sweeping argument is *Advantage Buildings. & Exteriors, Inc. v. Mid-Continent Casualty. Company*, 449 S.W.3d 16 (Mo. Ct. App. 2014).  The Court finds this case inapposite.

*Advantage* did not involve a denial letter at all.  Instead, the insurer in *Advantage* sent the insured a "reservation of rights," provisionally accepting defense of the case but "reserving its right to assert that there may be no duty to defend or indemnify against" the plaintiff's claims.  *Id.* at 20.  The reservation of rights stated that the insurer would investigate the claim and "promptly advise [the insured] of the outcome of our coverage analysis."  *Id.*  Despite these assurances, the insurer waited *two years*—until just four days before trial—to notify the insured that the policy did not cover the claims.  *Id.* at 24.  On these facts, the Court of Appeals held the insurer was estopped from denying coverage.  *Id.*  *Advantage* is easily distinguishable from the present case.  The adequacy of a denial letter was not before the court in that case.  Timeliness of denial was a controlling consideration in *Advantage* but is not at issue here.  In sum, *Advantage* lends no support to Defendants' contention that AMCO is estopped because the denial letter was confusing.

24

In *Brown*, the Missouri Supreme Court made clear that estoppel is the legal doctrine that operates to prohibit insurers from changing the basis for their denial of coverage, noting that "[i]t is the announcement of the specific defense which lulls the insured into relying to his detriment and subsequent injury on the insurer's stated position." 776 S.W.2d at 389.

> But the converse is true, as well; absent a statement which excludes other defenses and upon which the insured reasonably relies in preparing to preserve its claim, estoppel is not applicable. And where the insurer's initial denial is stated in such a way that it reasonably implies the subsequently, but more specifically stated, consistent reason for denial, the insured cannot claim she changed her position or relied to her detriment on the insurer's initial denial; estoppel may not be invoked.

*Id.* Both the April 2019 and July 2019 denial letters clearly stated the employment-related practices exclusion as a basis for denial of coverage. At a bare minimum, the April 2019 letter referred to the employment-related practice exclusion "in such a way that it reasonably implied the [July 2019 letter's] subsequently, but more specifically stated, consistent reason for denial." *Brown*, 776 S.W.2d at 389. Thus, the Court finds AMCO is not estopped from asserting the employment-related practices exclusion. And for the reasons discussed above, the AMCO Umbrella Policy's employment-related practices exclusion clearly and unambiguously excludes coverage for Barnett and Taylor's Claims. Accordingly, the Court grants [38] Plaintiffs' motion for summary judgment and denies [61] Defendants' cross-motion for summary judgment.

## IV.   Motion to exclude expert

Finally, the Court addresses [59] Plaintiff's motion to exclude at trial the opinions and testimony of Defendants' expert, E. Wayne Taff. Because the Court grants Plaintiffs' motion for summary judgment in its entirety, the Court denies the motion to exclude as moot.

Having resolved the pending motion, the Court further comments on the conduct of counsel for Barnett and Taylor, which the Court finds troubling. The parties expended a great deal of time and money on this matter, both in this Court and in the several state court

proceedings, and the Court concludes that much of that expense was entirely unnecessary.  In her Rule 56(d) motion for extension and in her representations to the Court during the Rule 16 conference, counsel for Barnett and Taylor made an impassioned plea to the Court for additional time to conduct discovery in this case, implying that such discovery was necessary to support Defendants' affirmative defenses.  The clear implication was that Barnett and Taylor's final opposition to summary judgment would have more substance than would have been possible without discovery.  Instead, Defendants' opposition contains little, if anything, that could not have been filed by the original deadline.  Counsel's conduct appears to have been pure gamesmanship—not an attempt to present the best possible arguments for her clients—but rather a delaying tactic to avoid resolution on the merits in this Court and seek an ostensibly more-favorable forum elsewhere.  Further, the legal arguments that counsel finally presented to this Court to oppose Plaintiffs' motion for summary judgment border on the frivolous.  Contracting parties, including insurance companies, have a right to believe their contracts will be enforced as written.  Plaintiffs' insurance policies clearly and unambiguously excluded coverage for employment discrimination.  Their denial letters clearly stated that exclusion as a basis for denial.  It has often been said that the wheels of justice turn slowly.  But in this case, the conduct of Barnett and Taylor's attorney actively delayed the just resolution of this matter.  The Court finds this conduct unbecoming of an officer of the Court.

## V.     Conclusion

Accordingly,

The Court denies [53] Defendants' Motion to Dismiss or Stay.

The Court grants [38] Plaintiffs' Motion for Summary Judgment, and denies [61] Defendants' Motion for Summary Judgment.

The Court denies as moot [59] Plaintiffs' Motion to Exclude the Opinions and Testimony of Defendants' Expert E. Wayne Taff.

DATED:  December 31, 2020.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**